2004 WY 104

John B. HARBER and Sylvia Harber, Trustees under the Harber Family Trust, dated April 1, 1997; and Larry Lozier and Sharon Lozier, Trustees of the Larry Lozier and Sharon E. Lozier Revocable Trust dated February 16, 1994, Appellants (Defendants),

v.

John W. (Wayne) JENSEN and Mary Kay Jensen, husband and wife, Appellees (Defendants).

No. 03–228.

Supreme Court of Wyoming.

Sept. 9, 2004.

Representing Appellants: Ralph E. Wood, Pinedale, Wyoming.

Representing Appellees: William L. Miller of Miller & Fasse, P.C., Riverton, Wyoming.

Before GOLDEN, LEHMAN, KITE, and VOIGT, JJ., and BROOKS, D.J.

KITE, Justice.

[¶ 1] To access their ranch, John and Mary Kay Jensen (Jensens) claimed an irrevocable license to use a road located on land belonging to their neighbors, Larry and Sharon Lozier, as trustees of the Larry Lozier and Sharon Lozier Trust (Loziers), and John B. and Sylvia Harber, Trustees under the Harber Family Trust (Harbers). The Jensens purchased their ranch from Mr. Jensen's parents, who had used the road for many years, and claimed they made certain improvements in reliance on continued permissive use of the road. The district court found an irrevocable license and granted a permanent injunction against the Loziers and the Harbers preventing them from interfering with the Jensens' use of the road. We hold the district court erred when it failed to find all of the required elements of an irrevocable license, and we reverse.

## ISSUES

[¶ 2] The Harbers and the Loziers present the following issues for review:

A. Was the Appellees' reliance on the continued permissive use of the subject road reasonably sufficient to be in good faith and to constitute a "fraud" where there was no express grant of permission only acquiescence?

B. Was the reliance of the Appellees on the mere acquiescence of the landowners over whose lands the subject access road crossed, sufficient to give rise to an irrevocable license where there was no actual request for the continued use of said road and express consent given?

C. Did the District Court err in granting a permanent injunction where an injunction limited to the life of the improvements would have allowed Appellees to recover their economic investment?

D. Did the District Court err in granting an overbroad irrevocable license for general access use which exceeds the access necessary to utilize the constructed improvements from which the irrevocable license developed?

[¶ 3] The Jensens phrase this issues as:

I. Did the district court err in finding that the appellees a[c]quired an irrevocable license for the use of the historic road?

II. Did the district court err in granting a permanent injunction enjoining the appellants from interfering with the appelle[es'] use of the historic road?

III. Did the district court err by granting an irrevocable license which is overbr[oa]d?

## FACTS

[¶ 4] Beginning in the 1930s, the Jensen family owned and operated a ranch in Sublette County, Wyoming. John and Mary Kay Jensen purchased the ranch from John's parents in 1975. Throughout their seventy years of ownership, the Jensen family accessed the ranch using a road crossing the Lozier and Harber property, which connected to State Highway 353. The road was the only existing means by which the Jensens could access their ranch headquarters year around. The Jensens, Loziers and Harbers were the only people who used the road, and they used it exclusively for ranch operations. The parties agreed that the Jensens' use of the road was at all times permissive and no written easement existed. Without informing the Loziers and the Harbers, or seeking specific permission to continue to use the road, the Jensens purchased the ranch in 1975 and made improvements, including rebuilding corrals in 1977, building two calving sheds in 1980 and 1981, and building a storage shed in 1997. The Jensens spent approximately $9,500 building the sheds. They did not provide evidence of the cost of the other improvements. The ranch was valued at approximately $2,000,000 at the time of trial. The southeast corner of the Jensen property abuts the Sublette County Boulder Lake Road, which could provide the Jensens with alternate access to their property. However, no road exists from their ranch buildings to that county road and the land in that area is boggy and impassable in the summer months.

[¶ 5] In 2002, Mr. Harber requested that the Jensens consider building a road on their own property to the Sublette County Boulder Lake Road and cease using the road across their property. The record reflected that it would cost between $20,000 and $40,000 to construct a road through the boggy area in the southeast corner of the Jensen property to the adjoining county road. When the Jensens refused, the Harbers gave notice that permission to use the road on their land would terminate on December 21, 2002. Ultimately, the Harbers locked a gate across the road where it intersects State Highway 353. The Jensens filed a complaint alleging they had acquired an irrevocable license to use the road and sought an injunction prohibiting any interference with their use of the road. The district court granted a preliminary injunction allowing the Jensens to continue to use the road until final resolution of the case. The case was tried to the court and no transcript of the trial was prepared. However, pursuant to W.R.A.P. 3.03, the parties prepared a statement of the evidence, which the district court adopted. In addition, the district court personally viewed the access road, the Jensen ranch and improvements, and the proposed access road to the Sublette County Boulder Lake Road.

[¶ 6] The district court entered judgment in favor of the Jensens finding they had acquired an irrevocable license to use the road across the Harber and Lozier property. In support of that conclusion, the court found the Jensens had historically used the road, and they had constructed improvements in reliance upon the permissive use of the road, although they had not sought permission for continued use of the road before doing so. In addition, the district court concluded the Jensens had no other "practical" access to the ranch and would be irreparably harmed

if they were prevented from using the historical access. The court granted a permanent injunction prohibiting the Harbers and Loziers from interfering with the Jensens' use of the road. The Harbers and Loziers filed a timely appeal of the judgment.

## STANDARD OF REVIEW

[¶ 7] When reviewing the factual findings of a district court following a bench trial, we apply the following standards:

> The factual findings of a judge are not entitled to the limited review afforded a jury verdict. While the findings are presumptively correct, the appellate court may examine all of the properly admissible evidence in the record. Due regard is given to the opportunity of the trial judge to assess the credibility of the witnesses, and our review does not entail re-weighing disputed evidence. Findings of fact will not be set aside unless they are clearly erroneous. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.

*Life Care Centers of America, Inc. v. Dexter,* 2003 WY 38, ¶ 7, 65 P.3d 385, ¶ 7 (Wyo.2003). Findings may not be set aside because we would have reached a different result. *Double Eagle Petroleum & Mining Corp. v. Questar Exploration & Production Co.,* 2003 WY 139, ¶ 6, 78 P.3d 679, ¶ 6 (Wyo.2003). Also, in reviewing a trial court's findings of fact,

> "we assume that the evidence of the prevailing party below is true and give that party every reasonable inference that can fairly and reasonably be drawn from it. We do not substitute ourselves for the trial court as a finder of facts; instead, we defer to those findings unless they are unsupported by the record or erroneous as a matter of law."

We affirm the trial court's findings if there is any evidence to support them.

*Life Care Centers,* ¶ 7 (citation omitted).

[¶ 8] When reviewing questions of law de novo, we afford no deference to the decision of the district court. *Double Eagle Petroleum,* ¶ 7. Requests for equitable relief are matters over which the district court exercises broad discretion. *Wilson v. Lucerne Canal and Power Co.,* 2003 WY 126, ¶ 9, 77 P.3d 412, ¶ 9 (Wyo.2003). We, therefore, review the district court's determination that an irrevocable license existed under the abuse of discretion standard.

## DISCUSSION

[¶ 9] The Harbers and the Loziers contend the district court erred in finding the evidence supported the creation of an irrevocable license because the Jensens' reliance on continued permissive use of the road was not reasonable. They contend that mere acquiescence, without notice, is insufficient to create an irrevocable license and that the Jensens were required to show an express grant of permission or that they were induced into undertaking the improvements on their property in reliance upon their neighbors' long-standing permission to use the road. In addition, the Harbers and the Loziers contend a permanent injunction exceeds what was necessary to allow the Jensens to recover the economic value of their improvements. The Jensens respond that they made significant expenditures in reliance upon their neighbors' historic acquiescence, warranting the district court's finding of an irrevocable license.

[¶ 10] A license is the authority to do certain acts on land without possessing any interest in the land. The privilege granted by a license is generally personal, revocable, and non-assignable. As a personal privilege, a license is generally revocable at the will of the licensor for any reason and without notice. Jon W. Bruce and James W. Ely, Jr., *The Law of Easements and Licenses in Land,* § 11.1 (West 2001). In certain circumstances, courts have determined licenses to be irrevocable. Generally, those circumstances are (1) when a licensee owns personal property on the land of the licensor, which creates a license "coupled with an interest" and (2) when the licensee has expended money or labor in reasonable reliance on the continued existence of the privilege. *Id.* at §§ 11:8–11:9. The Bruce/Ely treatise con-

tains a thorough and elucidating analysis of the development and scope of irrevocable licenses and notes they are "illusive," "a contradiction in terms," "potentially unfair to the licensor," and the cause of "a great deal of litigation." *Id.* at § 11:7. The treatise points out the similarity between irrevocable licenses and easements by estoppel. *Id.* at § 6:1. Noting that the courts narrowly apply easements by estoppel, the treatise instructs that "courts are reluctant to find an easement by estoppel on the basis of 'mere passive acquiescence.' " *Id.* To do so would run counter to the accepted notion that it is impossible to obtain a license by prescription because a license is predicated upon permissive use. *Id.* at § 11:2. Something more than mere acquiescence is required to create an irrevocable license because the doctrine is based on notions of estoppel or fraud with courts reasoning it would be inequitable to permit the licensor to revoke the privilege when the licensee has changed position in reliance upon the permitted use. *Id.* at § 11:9. In recognition of the potential problems caused by the uncertainty of irrevocable licenses, courts have imposed a variety of limitations upon their creation, such as expenditures of "substantial" sums of money with the licensor's knowledge, and even express permission by the licensor. *Id.*

[¶ 11] While Wyoming has long recognized the concept of an irrevocable license founded on the theory of equitable estoppel, the parties do not cite, and we are unable to find, any precedent for imposing an irrevocable license when the alleged licensor had no knowledge of the licensee's expenditure of money in reliance upon the mere silent acquiescence of the licensor. Justice Blume outlined our irrevocable license jurisprudence in *Coumas v. Transcontinental Garage, Inc.,* 68 Wyo. 99, 129, 230 P.2d 748, 759 (Wyo.1951) which began with *Metcalf v. Hart,* 3 Wyo. 513, 560, 27 P. 900, 918 (Wyo.1893). In *Metcalf,* the licensor had an unpatented desert land entry where the town of Buffalo, Wyoming now stands. Anxious to have a town built, Hart offered deeds to all who built on the land by the time he received a patent. Metcalf built a store on the land and the court applied the doctrines of license and equitable estoppel to afford him relief when

Hart's heirs sought to claim title to the property. The court noted, however, that no general rule could be laid down as to the revocability of licenses after expenditures of money. Justice Blume agreed, noting that there are many cases in which it clearly appears that a license is for temporary purposes only and no easement should be implied. Justice Blume quoted *Metcalf* as saying:

"[W]e believe the court was right in saying it would be a fraud to revoke the license in reliance upon which a house had been built, and that, if not at law, at least in equity, there is a remedy for the licensee * * *."

Justice Blume further said:

"When we have traveled through the mass of decisions, cloudy and conflicting at times, and have arrived at the principle that equity will relieve where there is fraud, actual or constructive, we have arrived at a principle in regard to which there is no conflict. And courts of equity, ... are very generally agreed that the revocation of a parol license to permanently occupy and improve realty after any considerable expense has been incurred, on the faith of such license, under circumstances such that the parties cannot be placed in *status quo,* is either actual or constructive fraud. Even the courts of law very extensively recognize the fraud, and some of them remedy it by equitable estoppel; but it seems the majority of them acknowledge their inability to furnish the appropriate remedy, while suggesting frequently that equity may do so."

*Coumas,* 68 Wyo. at 124, 230 P.2d at 756.

[¶ 12] The *Coumas* opinion also cited *Gustin v. Harting,* 20 Wyo. 1, 121 P. 522 (Wyo.1912), in which the court held a license to construct a flume in connection with irrigation could not be revoked after it was constructed. However, as Justice Blume noted, the *Gustin* court stressed that one reason to recognize a license in those circumstances was that, under Wyoming statutes, the builders of the flume could have condemned a right-of-way for the flume. In *Forde v. Libby,* 22 Wyo. 464, 143 P. 1190

(Wyo.1914), the owners had built their buildings in accordance with an agreement for an alley and the question was whether or not the license was revocable. The court held it was not, stating among other things: "We deem it unnecessary in the view we take of this case to enter into a lengthy discussion as to the difference between a parol license which may be revoked at will and an easement other than to say that it has been held by this court that a parol license may ripen into an easement when the licensee has expended money and the license has become executed." *Id.*

[¶ 13] Summarizing Wyoming case law on revocable versus irrevocable licenses, Justice Blume said:

We think that this court under these decisions is committed to the rule that in the proper case a parol license to use part of the real estate of another becomes irrevocable when a license is executed, and when the licensee in pursuance of and in reliance thereon has incurred expenditures of money or labor in making improvements of a permanent character. It has become a rule of property which should not be lightly repudiated.

*Coumas*, 68 Wyo. at 125, 230 P.2d at 757. *However*, the opinion cautioned:

What has been said does not mean that all licenses, followed by expenditures of money or labor, result in the irrevocability thereof, or that the same relief will be given in all cases. It has been said that each case depends "on the nature of the license and other circumstances and on whether a revocation in a given case would amount to a fraud on the rights of the licensee." 53 C.J.S., 816. In 5 Restatement of the Law, Property Servitudes, page 3135 we find it stated: "In many transactions which involve the creation of a privilege to use land, the privilege is such a minor incident to other purposes of the transaction that considerations of practical convenience prevent the transaction as a whole from being considered as an attempt to create an interest in land so far as concerns the compliance with formal requirements for the creation of such interests." In *Metcalf v. Hart*, supra, the court

stated among other things: "Cases may arise and have arisen where a license to occupy land has been intended and understood as a mere personal favor to the licensee to give him a place to live, or to occupy for some other beneficial purpose not transmissible, but revocable at will. Then expenditures would naturally be made accordingly. In other cases the granting of the license has been in terms an assurance of permanent possession. It is evident that the same rule cannot apply to both classes of cases. The revocation of the license, even after expenditures made in consequence of it, in the one case is a right, in the other a fraud. No general rule can be made as to the revocability of such licenses after such expenditures. Each case stands upon its own circumstances."

*Id.* Applying our precedent, this Court found the facts in *Coumas* justified finding an irrevocable license. Therein, the owner of a brick building with one wall on the boundary of his lot orally agreed to allow his neighbor to use that wall as part of a brick building the neighbor was constructing. After the construction was completed, the two neighbors shared the brick wall for many years. Ultimately, the owner of the wall sought to have the neighbor cease his use of the wall arguing such use was detrimental to the stability of the structure. Resisting the argument that an irrevocable license had been created, the owner argued his neighbor had not expended significant money in reliance on the license and, in fact, had saved money by not having to construct a wall of his own. Addressing the adequacy of the expenditure necessary to create an irrevocable license, we cited the well-settled common law doctrine

that a mere license, whether by deed or parol, is revocable at the pleasure of the licensor, unless coupled with an interest, or grant; or unless it is *executed; or,* according to the rule in many jurisdictions, unless, by reason of expenditures made by the licensee on the strength of the license, it would otherwise be inequitable to permit the licensor to effect a revocation.

*Id.* at 760–61.

[¶ 14] The conclusion we draw from the *Coumas* discussion is that if an owner

actively agrees to an expenditure being made by the licensee sufficient to cause a revocation of the license to work a fraud on the licensee, equitable principles demand that the license becomes irrevocable. In *Metcalf,* 3 Wyo. at 547, 27 P. at 913, we recognized the difficulty of establishing broad rules as to what constitutes fraud in this context and stated simply that fraud was "unfair dealing." If that unfair dealing caused another to change his position, or enticed him, fraud occurred and the perpetrator should be equitably estopped from benefiting from his actions. We can glean from *Metcalf* and its progeny that the fundamental purpose of an irrevocable license has always been to avoid the consequences of fraud.

[¶ 15] The only irrevocable license case we have considered since *Coumas* is *Roberts Construction Co. v. Vondriska,* 547 P.2d 1171 (Wyo.1976). In that case, we reiterated that the law of irrevocable licenses is founded in principles of estoppel.

There is little doubt in our minds that the enforcement of oral licenses against attempted revocation is based on principles of equitable estoppel. Summarizing briefly from 28 Am.Jur.2d Estoppel and Waiver § 35, p. 640 et seq. the elements of such estoppel, we find that the person estopped must be guilty of conduct which amounts to false representation, intention that such conduct be acted upon, and have knowledge of the real facts. The party claiming the estoppel must be without knowledge or means of knowledge, rely in good faith upon the conduct or statements of the other party, and either take action or refrain therefrom so as to change his position to his injury or prejudice. Application of the doctrine depends upon the facts of each particular case and "manifestly there can be no equitable estoppel if any essential element thereof is lacking or is not satisfactorily proved."

*Id.* at 1176 (citation omitted). In *Roberts,* this Court rejected a gravel mining company's claim of an irrevocable license to stockpile gravel on property adjoining its mine. Finding no permanent improvements had been made on the licensee's property and no expenditures were made in reliance on the permissive use of the stockpile, we concluded the elements of estoppel were not proven. While the gravel mining company provided evidence of certain expenditures made in the course of conducting its operation, this Court stated, "it does not appear that any of these operations were in any way peculiar to or irrevocably required the use of this particular tract. These are expenditures which would have had to be made if the limestone was piled on the quarry tract which as we have pointed out Roberts had the full right to under its lease." *Id.* at 1177.

[¶ 16] We believe it is clear from this precedent that one claiming an irrevocable license must prove the licensor had knowledge of the licensee's improvements and acted in some way to induce the licensee's reliance on the permissive use to make such improvements. Additionally, the improvements themselves must have required the use of the licensor's property.

[¶ 17] When we apply these elements to the facts of this case, we find the Jensens' claim lacking and the district court ruling in error because of its failure to find the necessary elements. The statement of the evidence set forth the following facts relevant to the application of these elements:

1. The use of the road was permissive in nature at all times.

2. Prior to their purchase of the ranch, the Jensens did not inform the landowners of their intent to purchase the ranch or request permission to use the road for access purposes.

3. The Jensens constructed certain improvements in reliance on the continued permissive use of the access road. Prior to constructing the improvements, the Jensens did not notify the landowners of their intent to construct the improvements and did not request permission to continue to use the road to access the improvements.

4. The corrals, calving sheds and storage sheds were utilized in the Jensens' ranching operation, which has an approximate value of $2,000,000.

5. The Jensen ranch abuts and has physical access to the Sublette County Boulder

Lake Road. Expenditures of $20,500 to $40,000 would be necessary to construct a useable road to connect to that county road.

[¶ 18] This evidence supported the district court's findings of fact as far as they went. However, a review of this evidence and the district court's findings exposes problems with the Jensens' claim of an irrevocable license. First, there was no evidence that the landowners ever knew the Jensens were making improvements in reliance on the permissive use of the road or that they took any action at all to induce such improvements. In all of our previous cases where we found irrevocable licenses were created, the landowner had taken some kind of affirmative action to allow the use to occur with full knowledge that the licensee intended to expend money in reliance upon the existence of the license. The landowners in this case took no such action. Second, the improvements made in previous cases required the use of the landowner's property in order to function. Here, the Jensens' ranch has other, albeit more expensive, access. Consequently, their improvements can be utilized without the use of their neighbors' property.

[¶ 19] To find an irrevocable license in a situation where the use was solely permissive, and the landowner had no notice of the licensee's expenditures in reliance upon the license and took no action to induce the licensee's actions, would take irrevocable license to a point far beyond where this and other courts have been willing to go. In addition, it would lead to a result counter to our clear precedent proscribing easements by prescription when the use was permissive. *Yeager v. Forbes*, 78 P.3d at 255; *Lincoln County Board of Commissioners v. Cook*, 2002 WY 23, 39 P.3d 1076 (Wyo.2002).

[¶ 20] Under the facts of this case, concluding, as the district court did, that the Jensens had an irrevocable license to use the access road, essentially granted them a prescriptive easement, which they could not establish because the use was permissive, even though they failed to give the landowners any notice of their intent to expend money in reliance upon their continued use of the road. We believe that result is unwise, unfair to landowners, and inconsistent with our prece-

dent on irrevocable licenses. The policy of promoting neighborliness runs throughout both our prescriptive easement and license precedent. The aim of both is to support permissive use without subjecting landowners to unintended consequences by their mere cooperation with a neighbor. It appears the district court was moved by the Jensens' long history of using the road in the family ranching operation, with no apparent disadvantage to their neighbors, and we admit to a similar reaction. However, the rule we adopt in this context will be applicable in multiple and differing circumstances and must be fair to all parties, including those who are simply trying to be good neighbors.

[¶ 21] We hold the Jensens did not acquire an irrevocable license to use the road under the facts of this case. As a result of that holding, we will not address the other issues raised by the Harbers and Loziers concerning the scope and length of the license. We reverse the judgment of the district court and remand with directions to enter such orders as may be necessary and consistent with this opinion.