# IN THE SUPREME COURT, STATE OF WYOMING

## 2024 WY 124

OCTOBER TERM, A.D. 2024

November 21, 2024

PAUL SORUM,

Appellant
(Defendant),

v.

S-24-0054

MIKE SIKORSKI,

Appellee
(Plaintiff).

*Appeal from the District Court of Campbell County*
*The Honorable James Michael Causey, Judge*

*Representing Appellant:*
Paul Sorum, pro se.

*Representing Appellee:*
Drake D. Hill, Hill Law Firm, LLC, Cheyenne, Wyoming.

*Before FOX, C.J., and BOOMGAARDEN, GRAY, FENN, and JAROSH, JJ.*

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**GRAY, Justice.**

[¶1]   Appellee Mike Sikorski filed a complaint against pro se Appellant Paul Sorum alleging Mr. Sorum breached written agreements for the lease of oil storage tanks.  At the bench trial, the district court amended the complaint to conform to the evidence that Mr. Sorum breached an oral guarantee to pay for the leases but did not allow Mr. Sorum to rebut Mr. Sikorski's testimony regarding the oral guarantee.  The district court found Mr. Sorum breached the oral guarantee and awarded Mr. Sikorski $114,537.56 in damages. Mr. Sorum appeals.  We affirm in part, reverse in part, and remand for the limited purpose of allowing Mr. Sorum to testify regarding the oral guarantee.

## *ISSUES*

[¶2]   Mr. Sorum identifies 23 issues and raises additional issues under other sections of his brief.  After reviewing the record, we find that some of these issues were not raised in the district court and are neither jurisdictional nor of such a fundamental nature that they must be addressed.  We will not consider them.  *Williams v. Tharp*, 2017 WY 8, ¶¶ 10–11, 388 P.3d 513, 517 (Wyo. 2017) (we "strongly adhere to '[o]ur general rule . . . that we will not consider issues not raised in the court below'" unless "the issue is jurisdictional or so fundamental that it must be considered" (citations omitted)).  Other issues are not supported by cogent argument on appeal and also will not be addressed.  *McInerney v. Kramer*, 2023 WY 108, ¶ 9, 537 P.3d 1146, 1148 (Wyo. 2023) (when a brief or an issue in that brief is not supported by cogent argument or pertinent legal authority, "we consistently have refused to consider the appeal [or the issue], whether the brief is by a litigant pro se or is filed by counsel").[1]  We consolidate and rephrase the issues Mr. Sorum raised below and supported by cogent argument on appeal as follows:

---

[1] We do not reach the following issues:

    1.   <u>Parol Evidence Issues</u>.  Mr. Sorum raises the following issues relating to parol evidence: Did the district court "violat[e] the parol evidence rule, by finding that [he] 'supplied guarantee of payment terms to known contract terms?'"; "Did the Trial Court err[] in considering parol evidence in determining the term of the lease agreements?"; and "Did the Court err[] in finding 'an oral agreement was made that this lease would range from July 1, 2016, until December 31, 2016?'"  Later, in the portion of his brief entitled "Parol Evidence Rule Was Violated," Mr. Sorum asserts that "[t]he subject lease agreements are complete and unambiguous" and posits that "the Trial Court's finding that Sorum 'supplied guarantee of payment terms to known contract terms' is a violation of the 'parol evidence rule.'"

    To the extent that Mr. Sorum's parol evidence rule argument relates to the term of the lease agreements, he provides no cogent argument or citation to legal authority, and we decline to consider his argument here.

    To the extent that Mr. Sorum's parol evidence rule argument relates to the oral guarantee, we address it under the first rephrased issue, "Did the district court clearly err when it found Mr. Sorum breached an oral guarantee to pay for the oil storage tank leases?"  We do not address his parol evidence challenge to the oral guarantee.

1

1. Did the district court clearly err when it found Mr. Sorum breached an oral guarantee to pay for the oil storage tank leases?

2. Did the district court abuse its discretion when it admitted various exhibits, including lease agreements, into evidence?

3. Did the district court err when it did not apply the statute of frauds?

4. Did the district court err when it failed to conclude that Mr. Sikorski's settlement with Mr. Sorum's business partner, Jeff Martinson, resolved this matter?

---

2. <u>Evidence Issues</u>. Mr. Sorum failed to object to the admission of Exhibits 2, 4, and 5 and raised no challenge to these exhibits below.

3. <u>Indemnification</u>. Mr. Sorum avouches that the district court erred "in not recognizing that [he] was indemnified of all liability in the Clean Crude, LLC Membership Agreement." This issue was not raised at trial.

4. <u>Speedy Trial</u>. Mr. Sorum argues that the district court erred when it "extend[ed] the schedule of this case from May 19, 2017, . . . through January 4, 2024, . . . violating [his] right to a speedy trial pursuant to the Wyoming Constitution Art. 1, § 8 . . . ." Other than quoting Art. 1, § 8, which provides that "courts shall be open and every person for an injury done to person, reputation or property shall have justice administered without sale, denial or delay," Mr. Sorum provides no argument in support of his contention. We note that different speedy trial timelines apply in criminal cases. *See, e.g.*, *Person v. State*, 2023 WY 26, ¶¶ 24–52, 526 P.3d 61, 71–75 (Wyo. 2023) (discussing W.R.Cr.P. 48, which generally requires criminal charges to be tried within 180 days after arraignment, and U.S. Const. amend. VI, which guarantees criminal defendants a speedy trial, in the context of a defendant's claim that his right to a speedy trial was violated).

5. <u>Amended Motion for Sanctions</u>. Mr. Sorum asserts the district court erred "by failing to grant [his] Amended Motion for Sanctions." He claims Mr. Sikorski committed "perjury," "numerous violations" of W.R.C.P. 11, and violations of the Wyoming Rules of Professional Conduct. Mr. Sorum states, "[Mr. Sikorski's] representation continued his case for an 'improper purpose' – in order 'to harass, cause unnecessary delay' and 'needlessly increase the cost of litigation.' . . . Plaintiff's actions are outrageous." He then asserts he "is entitled to Attorney Fees, Costs, defamation . . . , [home] rental costs . . . , and punitive damages . . ." in the amount of $17,807,976.15.

It is unclear whether Mr. Sorum is attempting to assert a counterclaim, argue that sanctions should have been awarded by the district court, or claim he is entitled to compensation for costs in accordance with the Wyoming Rules of Appellate Procedure. Mr. Sorum's request for $17,807,976.15 in damages was not raised below and is not developed by cogent argument.

6. <u>Mr. Martinson's Bankruptcy Forms</u>. Mr. Sorum lists as an issue: "Did the Trial Court err[] in failing to acknowledge Sorum's request for mandatory Judicial Notice of Martinson's Bankruptcy Forms sworn to and filed with the Minnesota Federal Bankruptcy Court?" Mr. Sorum did not raise this issue below and presents no argument on this issue in the body of his appellate brief.

2

5. Can Mr. Sorum raise the validity of service on Clean Crude, LLC (Clean Crude), a separate non-represented party, as a jurisdictional defense in the case against him?

Mr. Sorum also raises issues related to the district court's award of damages. Because we affirm in part, reverse in part, and remand, these issues are not yet ripe for review.

### FACTS

[¶3]　Mr. Sorum and Jeff Martinson each owned 50% of Clean Crude, an oil processing company. Mr. Sorum and Mr. Martinson approached Mr. Sikorski of Big Sky Limited of Wyoming (Big Sky) and inquired about leasing above-ground oil storage tanks from Big Sky. On June 8, 2016, Big Sky and Clean Crude entered into a written lease agreement for nine storage tanks. On June 16, Big Sky and Clean Crude entered into a second written lease agreement for five additional tanks. In 2017, Big Sky filed a lawsuit against Clean Crude alleging breach of contract, breach of the implied covenant of good faith and fair dealing, fraud, and unjust enrichment. Shortly after the initial filing, it amended its complaint adding Mr. Sorum and Mr. Martinson as defendants and seeking to pierce Clean Crude's corporate veil to establish the personal liability of Mr. Sorum and Mr. Martinson on its claims. Big Sky alleged that the defendants did not make payments under the leases and left the tanks in poor condition, requiring Big Sky to incur costs to restore them to a usable condition.

[¶4]　In 2018, default judgment was entered against Mr. Martinson, who later declared bankruptcy. In the bankruptcy proceedings, Mr. Martinson settled with Big Sky and agreed to pay it $100,000. In 2022, Mr. Sikorski, who had transferred his interest in Big Sky to others, was substituted as plaintiff for Big Sky in this case.

[¶5]　A bench trial was held in March 2023. In his opening statement, Mr. Sikorski's counsel described an August meeting between Mr. Sorum, Mr. Martinson, and Mr. Sikorski and stated that, at the meeting, Mr. Sorum and Mr. Martinson told Mr. Sikorski "[T]hey'll pay him even if they need to pay from personal funds." Mr. Sorum objected, arguing that these are "new allegations, and there's no evidence here for it." The district court overruled his objection.

[¶6]　During the trial, Mr. Sikorski testified that Big Sky received a down payment from Clean Crude in June 2016, but no subsequent lease payments. Mr. Sikorski testified Big Sky incurred costs to clean and remove the tanks from the premises where Clean Crude had operated and provided information on those costs.

[¶7]　Mr. Sikorski also testified that he met with Mr. Sorum and Mr. Martinson in August 2016. At this meeting, Mr. Sorum and Mr. Martinson asked him to store some of their specialized equipment in his shop. Mr. Sikorski agreed to the request and then raised his

3

concerns over Clean Crude's lack of payments under the leases. He testified, "[Mr. Sorum and Mr. Martinson] assured me that I had nothing to worry about, both . . . Mr. Sorum and Mr. Martinson said, . . . if we have to pay you personally, we'll make sure you get paid." Mr. Sorum objected to this testimony, arguing that it was "just hearsay" and that the allegations in the Amended Complaint confined missed payments to November and December. The district court allowed the testimony and noted that the pleadings would be amended to conform to the evidence under W.R.C.P. 15(b).

[¶8]    At the conclusion of the bench trial, the court ruled Clean Crude had breached the written lease agreements but found Mr. Sikorski had failed to make a sufficient showing to pierce the corporate veil and, therefore, Mr. Sorum could not be personally liable under the written leases. However, it held that Mr. Sorum was personally liable for damages, based on his oral guarantee. It found:

> Defendant Sorum and Mr. Martinson sought to assure Big Sky and Mr. Sikorski of payment in August 2016, with Mr. Martinson and Defendant Sorum stating to Mr. Sikorski that Big Sky and Mr. Sikorski would be paid even if Mr. Martinson and Defendant Sorum had to pay with personal funds. Defendant Sorum did not conduct cross-examination on this topic, and the record stands uncontradicted on this promise.

The district court concluded:

> This oral promise was definite in its terms as it referred to equipment and services known to the parties and already in place, and it related to charges that were well known to the parties that had been and continued to be incurred. Defendant Sorum and Mr. Martinson supplied guarantee of payment terms to known contract terms. That is, Defendant Sorum and Mr. Martinson would pay with their personal funds for the equipment being rented if funds were not available from Clean Crude.

[¶9]    The court entered judgment in favor of Mr. Sikorski. It found damages in the amount of $177,923.97, which included amounts due under the leases and costs for cleaning the tanks. The court subtracted $100,000 from this amount to account for Mr. Martinson's settlement leaving net damages of $77,923.97. It awarded prejudgment interest of $36,613.59 for a total judgment of $114,537.56. The court ordered Clean Crude and Mr. Sorum to be jointly and severally liable to Mr. Sikorski for the amounts awarded. This appeal followed. Additional facts will be discussed as relevant to our analysis.

4

## STANDARD OF REVIEW

[¶10]     When reviewing the factual findings of a district court following a bench trial, we apply the following standard of review:

> The factual findings of a judge are not entitled to the limited review afforded a jury verdict. While the findings are presumptively correct, the appellate court may examine all of the properly admissible evidence in the record. Due regard is given to the opportunity of the trial judge to assess the credibility of the witnesses, and our review does not entail re-weighing disputed evidence. Findings of fact will not be set aside unless they are clearly erroneous. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.

> *Piroschak* [*v. Whelan*, 2005 WY 26], ¶ 7, 106 P.3d [887,] 890 [(Wyo. 2005)]. Findings may not be set aside because we would have reached a different result. *Harber v. Jensen*, 2004 WY 104, ¶ 7, 97 P.3d 57, 60 (Wyo. 2004). Further,

> > we assume that the evidence of the prevailing party below is true and give that party every reasonable inference that can fairly and reasonably be drawn from it. We do not substitute ourselves for the trial court as a finder of facts; instead, we defer to those findings unless they are unsupported by the record or erroneous as a matter of law.

> *Id.* (quotation marks omitted).

*Hofstad v. Christie*, 2010 WY 134, ¶ 7, 240 P.3d 816, 818 (Wyo. 2010) (quoting *Belden v. Thorkildsen*, 2007 WY 68, ¶ 11, 156 P.3d 320, 323 (Wyo. 2007)).

*Strong Constr., Inc. v. City of Torrington*, 2011 WY 82, ¶¶ 8–9, 255 P.3d 903, 907 (Wyo. 2011).

[¶11]  "We review evidentiary rulings for abuse of discretion." *Lyman v. Childs*, 2023 WY 16, ¶ 50, 524 P.3d 744, 759 (Wyo. 2023) (citation omitted). "We will not disturb the trial court's determination of the admissibility of evidence unless the court clearly abused its discretion." *Id.* (citation omitted). The decision to allow an amendment to the pleadings is also reviewed for an abuse of discretion. *Singer v. Lajaunie*, 2014 WY 159, ¶ 25, 339 P.3d 277, 284 (Wyo. 2014); *Rose v. Rose*, 576 P.2d 458, 459 (Wyo. 1978).

> A court abuses its discretion when it acts in a manner which exceeds the bounds of reason under the circumstances. The party who is attacking the trial court's ruling has the burden to establish an abuse of discretion, and the ultimate issue is whether the court could reasonably conclude as it did.

*McBride-Kramer v. Kramer*, 2019 WY 10, ¶ 11, 433 P.3d 529, 532 (Wyo. 2019) (quoting *Three Way, Inc. v. Burton Enters., Inc.*, 2008 WY 18, ¶ 16, 177 P.3d 219, 225 (Wyo. 2008)).

[¶12]  "To the extent that this appeal raises questions of law, those questions are reviewed *de novo*." *Strong Constr.*, ¶ 9, 255 P.3d at 907 (quoting *Ramsdell v. State*, 2006 WY 159, ¶ 11, 149 P.3d 459, 462 (Wyo. 2006)).

### *DISCUSSION*

**I.    Did the district court clearly err when it found Mr. Sorum breached an oral guarantee to pay for the oil storage tank leases?**

[¶13]  Mr. Sorum argues that the district court erred when it found he breached an oral guarantee to pay on the Clean Crude leases because Mr. Sikorski's complaint contained no claims for breach of an oral guarantee. He contends that allowing Mr. Sikorski to present evidence on a claim not pled in the Amended Complaint unfairly surprised him at trial and that he was denied an opportunity to defend against the claim. He makes four arguments in support of this issue: the oral guarantee was not alleged in the Amended Complaint; Mr. Sikorski's testimony regarding the oral guarantee was inadmissible hearsay; his "right to be heard and his right to due process" were violated when he was not allowed to testify; and the finding that he was liable on the oral guarantee was in error because he was not on the Clean Crude board, he had resigned from Clean Crude, and the leases were between Big Sky and Clean Crude, not Mr. Sorum. We address Mr. Sorum's arguments in turn.

6

**A.      Did the district court err in finding an oral guarantee when no oral guarantee was pled?**

[¶14]  Mr. Sorum correctly asserts that the Amended Complaint contained no mention of an oral promise to pay.  The district court, however, amended the complaint to conform to the evidence, invoking W.R.C.P. 15(b).  That rule states:

> (b)      *Amendments During and After Trial. –*
>
> (1)      Based on an Objection at Trial. – If, at trial, a party objects that evidence is not within the issues raised in the pleadings, the court may permit the pleadings to be amended.  The court should freely permit an amendment when doing so will aid in presenting the merits and the objecting party fails to satisfy the court that the evidence would prejudice that party's action or defense on the merits.  The court may grant a continuance to enable the objecting party to meet the evidence.
>
> (2)      For Issues Tried by Consent. – When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings.  A party may move—at any time, even after judgment—to amend the pleadings to conform them to the evidence and to raise an unpleaded issue.  But failure to amend does not affect the result of the trial of the issue.

[¶15]  The record reveals that Mr. Sikorski's claim of a personal guarantee was not tried by the express or implied consent of the parties under Rule 15(b)(2).  Rather, Mr. Sorum objected when counsel for Mr. Sikorski first raised the issue of a personal guarantee in his opening statement and again when Mr. Sikorski testified to the guarantee.  As a result, we evaluate Mr. Sorum's argument under Rule 15(b)(1).

[¶16]  The district court did not abuse its discretion when it amended the pleadings to conform to the evidence under Rule 15(b)(1).  *Johnson v. Sikorski*, 2004 WY 137, ¶ 12, 100 P.3d 420, 423 (Wyo. 2004) (citation omitted); *supra* ¶ 11.  "Rule 15(b) requires that the party opposing the amendment be seriously prejudiced in the presentation of his action or defense on the merits.  Absent a showing of this character, the court should grant leave to amend and allow evidence on the newly raised issue to be introduced." *Morad v. Whitaker*, 565 P.2d 484, 485–86 (Wyo. 1977) (quoting 6A Charles A. Wright et al., *Federal Practice and Procedure* § 1495 (3d ed.)).

7

[¶17]   Mr. Sorum objected when Mr. Sikorski's counsel referred to the oral guarantee during his opening statement and when Mr. Sikorski testified to the oral guarantee.  Mr. Sorum, as the objecting party, bore the burden of satisfying the district court that the evidence would prejudice his defense on the merits.  Mr. Sorum did not argue that he would be prejudiced by the consideration of this claim or request a continuance.  Given the record before us, the district court did not abuse its discretion when it amended the pleadings to conform to the evidence.

**B.      Was Mr. Sikorski's testimony regarding the oral guarantee inadmissible hearsay?**

[¶18]   Mr. Sorum contends that the district court "violat[ed] the hearsay rule by finding that [he] 'supplied guarantee of payment terms to known contract terms.'"

[¶19]   "Hearsay is 'a statement, other than one made by the declarant while testifying at the trial . . . offered in evidence to prove the truth of the matter asserted.'" *Jontra Holdings Pty Ltd v. Gas Sensing Tech. Corp.*, 2021 WY 17, ¶ 58, 479 P.3d 1222, 1239 (Wyo. 2021) (quoting W.R.E. 801(c)).  "Hearsay statements are generally inadmissible because they are made outside of court and, therefore, presumed to be unreliable."  *Id.* (quoting *Bruce v. State*, 2015 WY 46, ¶ 40, 346 P.3d 909, 923 (Wyo. 2015)).  However, a hearsay statement is admissible if it is excluded from the definition of hearsay or if it fits a recognized exception to the hearsay rule.  *Jontra Holdings*, ¶ 58, 479 P.3d at 1239 (citing *Bruce*, ¶ 40, 346 P.3d at 923); W.R.E. 801.

[¶20]   During Mr. Sikorski's testimony regarding the oral guarantee, Mr. Sorum objected.  The extent of his objection was:

> MR. SORUM:  Objection.  This is just hearsay.
>
> I mean, the – the Complaint, again, says the missed payments were only in November and December; now he's changing his testimony.  This is wrong . . . and it's a violation of my due process rights and I object to this.

Mr. Sikorski argues that Mr. Sorum did not assert a hearsay objection "in any meaningful manner" and that, given his explanation, the objection pertained to the months of missed payments and not to the nature of the testimony.

[¶21]   We assume, without deciding, that Mr. Sorum made a meaningful hearsay objection.  We find, nevertheless, that the district court did not abuse its discretion when it admitted the testimony because it falls within an exclusion to the definition of hearsay.  *Jontra Holdings*, ¶ 58, 479 P.3d at 1239; *supra* ¶ 11.  W.R.E. 801(d)(2)(A) provides that "A

statement is not hearsay if . . . [t]he statement is offered against a party and is . . . his own statement, in either his individual or a representative capacity . . . ." Mr. Sorum's personal guarantee was an admission by a party opponent and is therefore not hearsay.

## C.    Did the district court err when it did not allow Mr. Sorum to testify regarding the oral guarantee to pay?

[¶22]  Mr. Sorum queries whether the "Trial Court err[ed] by violating [his] right to be heard and his right to due process by not letting [him] testify in order to rebut [Mr. Sikorski's] new allegation, which was not in the Amended Complaint, that [Mr.] Sorum gave an oral personal guarantee for payment of the lease agreements[.]"

[¶23]  In his pretrial memorandum,[2] Mr. Sorum indicated that he "w[ould] not be calling witnesses as it would be irrelevant—the evidence and the facts speak for themselves." At the pretrial conference, Mr. Sorum reiterated he would not be calling any witnesses and invoked the Fifth Amendment to the extent that Mr. Sikorski wanted to call him as an adverse witness. Later in the same pretrial conference, Mr. Sorum rescinded his claim to a Fifth Amendment right, stating that he would testify if called by Mr. Sikorski. Prior to trial, Mr. Sorum did not amend his witness list or inform the district court or Mr. Sikorski that he intended to call himself, or any other person, as a witness at trial.

[¶24]  While cross-examining Mr. Sikorski during trial, Mr. Sorum told the court that he would like to testify:

> MR. SORUM: I mean, I'd like to testify, but I was supposed to be a witness, an adverse witness, but I would like to testify because I don't have any . . . witnesses available to me in this particular, it's a unique case, and I have a lot of evidence that I submitted to the Court in pretrial, I – I would like to use them but I don't have a witness who can verify them, so I was wondering if I could be a witness and verify those documents. A lot of them are just documents, like from the Secretary of State's office.
>
> THE COURT: And I can't advise you in terms of how you present your case, sir.

---

[2] In his pretrial memorandum, Mr. Sikorski took issue with Mr. Sorum's failure to timely engage in mandatory discovery disclosures and designate his witnesses and exhibits. He requested that the court exclude any witnesses or exhibits submitted by Mr. Sorum beyond the designation deadline, as provided by W.R.C.P. 37(b)(2)(A). The district court did not rule on this request, and Mr. Sorum filed a pretrial memorandum after the deadline.

9

If you've got evidence that you . . . can't authenticate, then you . . . probably have an objection from the other side. The Court would have to rule on that particular objection at that point in time. . . . [Mr. Sikorski's counsel is] in the midst of his case. If you have a case to present afterwards and you're not precluded by any previous rulings or other rulings of this Court, then you can present what evidence you have.

MR. SORUM: I . . . will do that. I'm just saying to the Court that the evidence I have [Mr. Sikorski's counsel] already has, the Court has, I just don't have a witness.

THE COURT: And, again, if you're gonna present documents, et cetera, you're gonna have to be able to present that, authenticate it, et cetera, okay? . . . Any further questions, Mr. Sorum?

MR. SORUM: Not at this time.

[¶25] After Mr. Sikorski rested, Mr. Sorum told the court he would like to call himself as a witness. He stated, "I would like to testify now if I could. . . . And then if I do that, . . . in the testimony I'll refer to exhibits that I'd like to introduce if I can." Mr. Sikorski's counsel objected, citing Mr. Sorum's pretrial memorandum which stated he "w[ould] not be calling witnesses as it would be irrelevant." Mr. Sikorski's counsel stated that he would have deposed Mr. Sorum if he had listed himself as a witness. The district court sustained Mr. Sikorski's objection and denied Mr. Sorum's request to testify. Mr. Sorum asked the district court to reconsider its ruling based on Mr. Sikorski's designation of Mr. Sorum as a potential witness and Mr. Sorum's pretrial conference statements that he would testify. The court responded:

You . . . indicated that you would testify if called as a witness [by Mr. Sikorski]; that's a different thing from being able to call yourself as a witness. . . . We understand that you're a self-represented litigant and we've done certain things to try to – to give you the benefit of the doubt whenever possible but this is one that we feel pretty strongly about given the status of this case and our rules.

[¶26] Listing witnesses who will testify at trial is "desirable and should be encouraged." *Caldwell v. Yamaha Motor Co.*, 648 P.2d 519, 527 (Wyo. 1982) (quoting *Ford Motor Co. v. Kuhbacher*, 518 P.2d 1255, 1260 (Wyo. 1974)). We have found no abuse of discretion when district courts have excluded testimony from witnesses that had not been designated pretrial. In *Contreras By & Through Contreras v. Carbon Cnty. Sch. Dist. No. 1*, appellants

sought to introduce testimony of witnesses that had not been identified in the appellants' pretrial memorandum. Their amended pretrial memorandum contained no summary as to how the witnesses would testify. The appellants made no offer of proof either at the pretrial conference or during trial as to the nature of the testimony. We held that because "the substance of their testimony has not been preserved in any way for this appeal[,] . . . [t]here is . . . no basis for us to conclude that the trial court abused its discretion in excluding" the evidence. *Contreras By & Through Contreras v. Carbon Cnty. Sch. Dist. No. 1*, 843 P.2d 589, 596 (Wyo. 1992).

[¶27]  Likewise, in *In re Paternity of HLG*, the appellant argued that her medical provider should have been allowed to provide expert testimony, even though she did not disclose the nature of that testimony before trial. We held that because Mother

> did not make an offer of proof in the district court, . . . we do not know what [the witness'] answer to the question about her opinion would have been. Without that information, we have no way of evaluating whether Mother's discovery violation was harmless. In general, when a party fails to make an offer of proof to show the substance of the evidence that would have been presented, she waives any argument that the district court abused its discretion by refusing the evidence.

*In re Paternity of HLG*, 2016 WY 35, ¶ 29, 368 P.3d 902, 909 (Wyo. 2016) (citing W.R.E. 103(a)(2); *Guy-Thomas v. Thomas*, 2015 WY 35, ¶ 12, 344 P.3d 782, 786 (Wyo. 2015)); *see also Gill v. Lockhart*, 2022 WY 87, ¶ 49, 512 P.3d 971, 984 (Wyo. 2022) (holding that because the appellant "did not list Mr. Hunt, the district court could have reasonably concluded Mr. Hunt's testimony should not be allowed").

[¶28]  We have, in other instances, recognized that it is proper for a district court to allow rebuttal or impeachment testimony even when the witness was previously undisclosed. *Caldwell*, 648 P.2d at 527; *see also* John D. Hodson, Annotation, *Propriety of Allowing State Court Civil Litigant to Call Nonexpert Witness Whose Name or Address Was Not Disclosed During Pretrial Discovery Proceedings*, 63 A.L.R.4th 712, § 31[a] (1988) (citing cases). The general binding effect of pretrial orders "does not mean that there should be rigid or pointless adherence to them in a trial but rather that avoidance of possible hardship to parties and the accomplishment of substantial justice to the merits of claims should be among the factors which the trial court considers." *Caldwell*, 648 P.2d at 527 (quoting *Kuhbacher*, 518 P.2d at 1260).

[¶29]  In *Caldwell*, the defendant in a products liability lawsuit sought to introduce testimony of a witness who had not been listed in the pretrial order. The district court allowed the testimony, and the plaintiff appealed, arguing that the testimony should have been excluded because the witness had not been disclosed. We affirmed, explaining that

the testimony was relevant to the defendant's theory of the case, it was offered to impeach other evidence, the plaintiff had been allowed to interview the witness before he took the stand, and the plaintiff was allowed to call a rebuttal witness. *Caldwell*, 648 P.2d at 527.

[¶30] Even though Mr. Sorum did not designate himself as a witness, invoked and then withdrew a refusal to testify based on the Fifth Amendment, stated that he would not call a witness, and never amended his witness list, the district court's decision not to allow Mr. Sorum to testify was unreasonable in the unique circumstances of this case. After Mr. Sorum filed his pretrial memorandum (stating he would call no witnesses) and after the pretrial conference (during which he agreed to testify if called as an adverse witness), the district court allowed Mr. Sikorski to testify regarding an unpled claim, Mr. Sorum's oral guarantee. It then amended the pleadings to include the unpled claim. Importantly, while Mr. Sorum made no official offer of proof as to the substance of the evidence he proposed to present through his testimony, he did notify the court as to the nature of his testimony. During his opening statement, Mr. Sorum said:

> First I want to say that I deny all the plaintiff's allegations. He provides no evidence for his allegations and, specifically I deny also that I made any verbal assertions or – regarding any financial information or any personal guarantees, so there's no evidence of these verbal communications with plaintiff, so that's one thing.

What distinguishes this case from *Gill*, *HLG*, and *Contreras* is the district court's admission of evidence on a newly raised issue and its amendment of the pleadings to conform to that evidence. Under these facts, the district court's insistence on binding Mr. Sorum to his pretrial witness designation was an abuse of discretion. "Although the court should be cautious, even reluctant, to modify its pretrial orders during trial, . . . when circumstances require modification to prevent manifest injustice, the court has not only the right but an obligation to relieve counsel of his pretrial stipulations." *McCabe v. R.A. Manning Constr. Co.*, 674 P.2d 699, 703 (Wyo. 1983). The district court should have allowed Mr. Sorum to testify on the question of the oral guarantee.

## D. What was the effect of Mr. Sorum's lack of authority to govern Clean Crude?

[¶31] Mr. Sorum asserts that the district court erred "in failing to recognize that the potential liability of Sorum was prohibited by Wyoming law – Clean Crude, LLC was board run and Sorum was not on the board." The district court found in favor of Mr. Sorum on his liability as a member of Clean Crude. The district court discussed factors utilized to determine whether a corporate veil should be pierced and why those factors favored Mr. Sorum. It concluded, "The evidence establishes that [Mr. Sikorski] has failed to make a sufficient showing to pierce the veil." Because Mr. Sorum prevailed on this question at trial, and Mr. Sikorski has not appealed, we do not consider it. We note that the question

12

of Mr. Sorum's liability based on the oral guarantee is divorced from his liability as a member of Clean Crude.  *See supra* ¶ 8.

## II.     Did the district court abuse its discretion when it admitted various exhibits, including lease agreements, into evidence?

[¶32]  Mr. Sorum asserts that the district court erred by admitting into evidence two lease agreements, one that he alleged was forged and the other that he alleged was not signed by Mr. Sikorski.  During the trial, Mr. Sorum objected to the admission of some exhibits and did not object to others.  Mr. Sorum did not object to Exhibits 2, 4, and 5, and we do not consider his arguments regarding the admission of those exhibits.  Despite the district court's finding to the contrary, Mr. Sorum did object to Exhibit 11 contending his signature was forged.[3]  It is uncontroverted that he objected to Exhibit 12.

[¶33]  We find no abuse of discretion in the admission of Exhibits 11 and 12.  *N. Arapaho Tribe v. Baldwin, Crocker & Rudd, P.C.*, 2023 WY 101, ¶ 43, 537 P.3d 720, 732 (Wyo. 2023); *supra* ¶ 11.

[¶34]  On appeal, Mr. Sorum appears to challenge the authenticity of the lease agreements, stating the "lease agreements . . . were not the actual lease agreements signed by" Mr. Sikorski.[4]

[¶35]  Exhibit 11 was an email from Mr. Sikorski to Mr. Sorum, attaching a "reminder [that Mr. Sorum's] signature as the COO of Clean Crude" was affixed to the contracts signed with Big Sky, along with an attached signature page containing Mr. Sorum's signature.  At trial Mr. Sorum contended his electronic signature on the signature page was "forged . . . they took my electronic signature and copy and pasted" it on the document. The district court admitted Exhibit 11 over Mr. Sorum's objection.  Mr. Sikorski testified that he did not forge Mr. Sorum's signature on the document.  This testimony is uncontroverted.  While the district court's posttrial order incorrectly recited that Mr. Sikorski had failed to object to the admission of Exhibit 11, *see supra* n.3, this error is not determinative as to the admissibility of Exhibit 11 at trial.  The district court's decision to

---

[3] After trial, and before the district court entered its findings, Mr. Sorum moved to strike all the lease evidence, Exhibits 2, 4, 5, 11, and 12.  Mr. Sorum relied on W.R.C.P. 12(f)(2), W.R.E. 103(a)(1), and also argued that those exhibits were not on Mr. Sikorski's exhibit list.  The district court denied the motion.  It found that the exhibit list "clearly refers to 'all contracts and documents required for proof of damages including invoices and evidence of expenses,'" and W.R.C.P. 12(f)(2), which allows a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter," did not apply.  It explained that W.R.C.P. 12(f)(2) applies to evidence attached to written pleadings, not evidence admitted at trial.  It held that Mr. Sorum's failure to object to Exhibits 2, 4, 5, and 11 at trial precluded his objection to admission after trial.

[4] He also questions the authority of a Big Sky employee to sign the leases, an issue he did not raise below. We do not address this argument.

admit Exhibit 11 was reasonable given Mr. Sikorski's unchallenged testimony that it had been electronically signed by Mr. Sorum.

[¶36]   Exhibit 12 was a lease for a trailer.  Mr. Sorum's objection to Exhibit 12 at trial was twofold: first, his signature on the document was electronic; and second, it was unsigned by Mr. Sikorski.  Mr. Sikorski testified regarding Exhibit 12 as follows:

> Q.      [by Mr. Sikorski's counsel] I'm gonna hand to you what's been marked as Exhibit 12, have you identify that for us.
>
> A.      [by Mr. Sikorski] That's the equipment lease for the 2015 Big Tex trailer that Paul Sorum signed as COO of Clean Crude.
>
> Q.      Now, this version doesn't have your signature on it, true?
>
> A.      No, no, because I think that's the one he emailed back to us, so it wouldn't be on there until I got it, received it, and then signed it.

The district court admitted Exhibit 12 into evidence.  It found that Exhibit 12 was authenticated during trial.  This finding appears to be grounded in W.R.E. 1003.  Rule 1003 addresses the admissibility of duplicate documents and provides:

> **Admissibility of Duplicates.**
>        A duplicate is admissible under this rule or as may be otherwise provided by statute to the same extent as an original unless (1) a genuine question is raised as to the authenticity or continuing effectiveness of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original.

[¶37]   Mr. Sikorski testified, albeit inarticulately, that Exhibit 12 was a duplicate of the lease agreement that he signed after receiving it by email with Mr. Sorum's signature.  At trial, Mr. Sorum raised no question as to the authenticity of the original lease and did not call into question the first exception in W.R.E. 1003.  As to the second exception, the record is silent as to any circumstances which would make it unfair to admit the duplicate in lieu of the original.  *See Starrett v. Shepard*, 606 P.2d 1247, 1251–53 (Wyo. 1980).  *See also* W.R.E. 901(b)(1) (providing that authentication of a document may be made by "[t]estimony of [w]itness with [k]nowledge" that "a matter is what it is claimed to be"); *Foster v. State*, 2010 WY 8, ¶ 13, 224 P.3d 1, 6 (Wyo. 2010).

14

[¶38]  Mr. Sikorski identified Exhibit 12 as the parties' lease agreement.  He testified that Exhibit 12 was the lease which Mr. Sorum had signed and emailed to him.  The district court did not abuse its discretion when it admitted Exhibit 12.

### III.    Did the district court err when it did not apply the statute of frauds?

[¶39]  After holding that Mr. Sorum and Mr. Martinson had personally guaranteed payment on the leases, the district court said, while "the court has some concerns regarding the statute of frauds, Defendant Sorum did not assert this defense.  Accordingly, any potential statute of frauds defense is waived, and the damages claimed by [Mr. Sikorski] are properly assessed against Defendant Sorum personally."  The statute of frauds defense was not raised at trial or in any pleadings filed before trial.

[¶40]  On appeal, Mr. Sorum asserts that he raised the statute of frauds as a defense in his closing brief submitted to the district court after the trial.  In his posttrial brief, Mr. Sorum addressed the question of liability for costs incurred by Mr. Sikorski and Big Sky to clean the tanks left by Clean Crude.  He stated,

> [¶144.] None of the lease agreements contain language that Clean Crude . . . shall pay the cost for cleaning of the tanks after the term of the lease is over on December 31, 2016 nor is there a provision for liquidated damages.
>
> [¶145.] Wyoming statute § 34.1-2-201 states in pertinent part, ". . . the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing."
>
> [¶146.] Because[] the cost of cleaning of the tanks after December 31, 2016 is not in the lease agreements . . . , Plaintiff cannot be granted relief for these alleged costs . . . .

[¶41]  The closest Mr. Sorum came to arguing the statute of frauds in his brief is the reference to Wyo. Stat. Ann. § 34.1-2-201.  Wyo. Stat. Ann. § 34.1-2-201 is part of Wyoming's Uniform Commercial Code (UCC).  The UCC applies to contracts for the sale of goods.  Wyo. Stat. Ann. § 34.1-2-201 (the UCC applies to "a contract for the sale of goods for the price of five hundred dollars ($500.00) or more").  It is inapplicable to the leases at issue here.  Mr. Sorum's citation to the UCC in the context of his argument that the leases did not contemplate cleaning of the tanks did not adequately raise the statute of frauds as it might apply to the personal guarantee.

## IV. Did the district court err when it failed to conclude that Mr. Sikorski's settlement with Mr. Sorum's business partner, Mr. Martinson, resolved this matter?

[¶42] Mr. Sorum raises two issues stemming from Mr. Sikorski's settlement with Mr. Martinson on this case. He argues the district court erred first "in failing to find that [Mr. Sikorski's] [s]ettlement [a]greement with [d]efendant Jeff Martinson ended the instant case" and next "in failing to comply with the requirements of Wyoming statute § 34.1-3-311 'Accord and satisfaction by use of instrument.'"

[¶43] In May 2018, the district court entered default judgment against Mr. Martinson, awarding $244,068.87 in damages to Mr. Sikorski. In February 2020, Mr. Martinson and Mr. Sikorski entered into a settlement agreement. The Stipulation of Settlement filed in the United States Bankruptcy Court states that Mr. Martinson "will propose to pay in full satisfaction of [Mr. Sikorski's] claim a total of $100,000.00 . . . ."

[¶44] Mr. Sorum contends that the default judgment provides "indisputably more than a full recovery" of Mr. Sikorski's damages, and the subsequent settlement between Mr. Sikorski and Mr. Martinson should "end the case." We recognize that a party may not recover more than full performance for a breach of contract. *Cargill, Inc. v. Mountain Cement Co.*, 891 P.2d 57, 67 (Wyo. 1995). However, the settlement with Mr. Martinson did not fully resolve Mr. Sikorski's claims in this lawsuit. Accordingly, Mr. Sikorski was entitled to pursue claims against the remaining defendants. *See* Restatement (First) of Judgments § 94 (Am. Law Inst. 1942) ("the rendition of a judgment in an action against one of two or more persons liable for . . . breach of contract . . . does not affect the claim against the other"); *Biles v. Harris*, ¶ 10, 521 P.2d 884, 887 (Okla. Civ. App. 1974) ("taking judgment against one defendant does not result in a merger or extinction of the cause of action in the sense that the plaintiff cannot subsequently pursue and take judgment against other defendants jointly and severally liable for the same damage. He can take as many judgments as he wishes against separate parties for all or any part of the same damage as long as he does not satisfy one of them." (citing Restatement, Judgments §§ 94, 95)).

[¶45] In support of his argument, Mr. Sorum keys in on the "in full satisfaction" language of the Stipulation of Settlement and contends that because Mr. Sikorski's claims were fully satisfied, there remained nothing to litigate. Mr. Sorum misinterprets the effect of Mr. Martinson's settlement. The Stipulation of Settlement states that Mr. Sikorski "is continuing to pursue claims against Paul Sorum in connection with the same transaction that gave rise to" the judgment against Mr. Martinson. Mr. Sikorski's settlement with Mr. Martinson only resolved his claims against Mr. Martinson—it did not affect his claims against Mr. Sorum and Clean Crude.

[¶46]  Mr. Sorum also argues that the settlement constitutes an "accord and satisfaction" under the UCC, Wyo. Stat. Ann. § 34.1-3-311.[5]  As we explained *supra* ¶ 41, the UCC is not applicable to the claims at issue here, and the settlement with Mr. Martinson did not preclude a judgment against Mr. Sorum and Clean Crude.

## V.    Can Mr. Sorum raise the validity of service on Clean Crude, a separate non-represented party, as a jurisdictional defense in the case against him?

[¶47]  Mr. Sorum contends the district court erred in continuing the case when the summons was clearly not served on Clean Crude's registered agent in Delaware.  Mr. Sorum argues that Mr. Sikorski failed to properly serve Clean Crude because Mr. Sikorski believed Clean Crude was registered in North Dakota and, as a result, he did not serve Clean Crude's Delaware registered agent.  Mr. Sorum has consistently disclaimed any

---

[5] Section 34.1-3-311 provides:

**Accord and satisfaction by use of instrument.**

(a)    If a person against whom a claim is asserted proves that (1) that person in good faith tendered an instrument to the claimant as full satisfaction of the claim, (2) the amount of the claim was unliquidated or subject to a bona fide dispute, and (3) the claimant obtained payment of the instrument, the following subsections apply.

(b)    Unless subsection (c) applies, the claim is discharged if the person against whom the claim is asserted proves that the instrument or an accompanying written communication contained a conspicuous statement to the effect that the instrument was tendered as full satisfaction of the claim.

(c)    Subject to subsection (d), a claim is not discharged under subsection (b) if either of the following applies:

(i)    The claimant, if an organization, proves that (1) within a reasonable time before the tender, the claimant sent a conspicuous statement to the person against whom the claim is asserted that communications concerning disputed debts, including an instrument tendered as full satisfaction of a debt, are to be sent to a designated person, office, or place, and (2) the instrument or accompanying communication was not received by that designated person, office, or place;

(ii)    The claimant, whether or not an organization, proves that within ninety (90) days after payment of the instrument, the claimant tendered repayment of the amount of the instrument to the person against whom the claim is asserted.  This paragraph does not apply if the claimant is an organization that sent a statement complying with paragraph (i).

(d)    A claim is discharged if the person against whom the claim is asserted proves that within a reasonable time before collection of the instrument was initiated, the claimant, or an agent of the claimant having direct responsibility with respect to the disputed obligation, knew that the instrument was tendered in full satisfaction of the claim.

Wyo. Stat. Ann. § 34.1-3-311 (LexisNexis 2023).

17

ability to act on behalf of Clean Crude, and he lacks standing to challenge any defect in service on Clean Crude. *See Sw. Constr. Receivables, Ltd. v. Regions Bank*, 162 S.W.3d 859, 864 (Tex. App. 2005) ("Generally, only the entity that has not been properly served has standing to challenge the lack of due process." (citing *People v. DeLaire*, 610 N.E.2d 1277, 1287–88 (Ill. App. Ct. 1993))).

## *CONCLUSION*

[¶48] We affirm in part, reverse in part, and remand. The district court abused its discretion when it declined to allow Mr. Sorum to testify regarding Mr. Sikorski's allegation of an oral guarantee. We decline to consider Mr. Sorum's issues on damages as they are not yet ripe for review, given our remand. The district court did not abuse its discretion or err as a matter of law with respect to the remaining issues raised by Mr. Sorum. Remand is limited to reconsideration of the personal guarantee and providing the parties an opportunity to introduce evidence on that issue.