MAY, J.
The bank appeals an order granting a motion to dismiss and entering final judgment for the borrower. The bank argues the trial court erred in three ways: (1) dismissing the complaint based on the doctrine of unclean hands; (2) finding the bank knew or should have known of the original lender’s bad acts; and (3) precluding the bank’s ability to pursue an action on the note. We agree and reverse.
The bank filed a one-count complaint to foreclose the mortgage after the borrower defaulted on the loan. The borrower answered and asserted affirmative defenses, including the original lender committed fi'aud and used unclean hands in securing the loan.
The borrower’s fraud defense alleged the original lender’s loan consultant falsified the loan application by overstating the borrower’s liquid assets, her monthly income, and ownership of real estate. The ujiclean hands defense alleged “predicate acts” under chapter 772 (Civil Remedies for Criminal Practices), and re-alleged fraud by the original lender for falsifying the loan application. The defense further alleged that if the bank “was not aware of the.[original lender’s] fraudulent behavior ... then it did not exercise due diligence and should be made to assume the consequences.”
The case proceeded to a non-jury trial.
*1033 Testimony revealed that a loan consultant for the original lender contacted the borrower to help secure the loan. The borrower completed a Master Loan Application telephonically with the loan consultant. While considering a moré expensive property, the borrower ultimately settled on the property in dispute, and secured the loan for a smaller amount.
The borrower testified that the loan closing lasted approximately one hour. She was presented with a series of documents, including the loan application, which she signed in two separate- places. The application contained the following language, which the -borrower acknowledged preceded her first signature on the application:
Each of the undersigned specifically represents to lender-and to lender’s actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and, assigns and agrees and acknowledges that the information provided in this application is true and correct as of the date set forth opposite my signature. ...
(Emphasis added).
The loan application listed the borrower’s assets, including $200,000 in liquid assets, monthly income of $8,300, and a schedule of real estate owned. The borrower testified that the income and asset information were false and the loan consultant inserted the information without her knowledge.
The borrower testified that she was not coerced into signing the loan application. She admitted she had not read what she signed even though she was given an opportunity to do so. She took the time to review the loan’s interest provisions at closing, and admitted that she noticed the loan application offered her an adjustable-rate mortgage while she originally requested a fixed-rate mortgage. She knew exactly the amount she was borrowing. She “assumed” she was approved for the adjustable-rate loan based on her lower salary and far less liquid assets, than, reflected on the loan application. She left with a copy-of the signed documents.
Just four months after securing the initial loan, the borrower applied for and received a home equity line of credit from the same lender. She subsequently signed a mortgage modification agreement to correct the legal description of the property. The signed agreement included a “reaffirmation” clause, stating that “[t]he Mortgagor 'hereby reaffirms all of its obligations set forth in the Note, Mortgage, and Loan Documents[.]”
The borrower and her husband made all monthly loan payments on both the adjustable rate mortgage and the home equity line of credit for almost four years until they were both laid off. They have not made any payments since 2009. The bank purchased the note and mortgage from the original lender.
The trial court found:
(1) the borrower did not take part in the original lender’s falsification of the loan application;
(2) the original lender overstated the borrower’s level of education, included a $200,000 gift and the' ownership of real estate that did not exist, and inflated her income to $99,600 on the loan application;
(3) the bank “either knew of this conduct and therefore acquiesced to it, or failed to conduct due diligence which is in and of itself similar conduct.”
The trial court cited Shahar v. Green Tree Servicing, 125 So.3d 251 (Fla. 4th DCA 2013), and concluded that the bank had unclean hands and was “precluded from foreclosing on the [mjortgage and enforce *1034 ment of the [promissory [n]ote at [i]ssue in equity.”
The trial court granted the borrower’s motion for dismissal and entered a final judgment for the borrower. From this judgment, the bank now appeals.
The bank argues the judgment should be reversed for three reasons: (1) the court misapplied the doctrine of unclean hands; (2) even if the original lender’s conduct supports the defense of unclean hands, the court erred in applying it to the successor bank; and (3) the court’s dismissal of the foreclosure complaint should not preclude the bank from proceeding on the note.
“[W]here a trial court’s conclusions following a non-jury trial are based upon legal error, the standard of review is de novo.” Acoustic Innovations, Inc., v. Schafer, 976 So.2d 1139, 1143 (Fla. 4th DCA 2008) (citation omitted). “The sufficiency of the evidence is an issue of law reviewed de novo.” Norman v. Padgett, 125 So.3d 977, 978 (Fla. 4th DCA 2013).
This case is controlled by Vidal v. Liquidation Properties, Inc., 104 So.3d 1274 (Fla. 4th DCA 2013). There, the borrowers raised the affirmative defense of fraud based on the false inflation of their income on a loan application. Id. at 1278. The trial court rejected the borrowers’ affirmative defense as legally insufficient as a matter of law, and we affirmed on that issue.
Of course, the [borrowers] want damages caused by the lender’s treachery. The [borrowers] were obviously in a position to know their own income. Signing off on their own fraudulent loan application precludes them from raising this fraud as an affirmative defense.
Id. (emphasis added).
Here, the borrower was in the best position to know her income and financiál status. The loan was a “low-doc” loan; it was expected that she was verifying her own income without further investigation or verification by the original lender. The court erred in dismissing the bank’s foreclosure action based on the doctrine of unclean hands. Id.
The trial court’s reliance on Shahar v. Green Tree Servicing LLC, 125 So.3d 251 (Fla. 4th DCA 2013), was misplaced. There, we reversed a summary judgment based in part on an unclean hands defense because of the “unique facts” of the case. Id. at 253-54. The unique facts were: (1) the lender altered the income information on the loan application; (2) the lender destroyed documentation of the borrowers’ income and assets; (3) the lender did not allow the borrowers an opportunity to review the lengthy loan paperwork at closing; (4) the lender threatened the borrowers that if they did not sign the new loan application, all fees would still remain due and payable; and (5)the borrowers were specifically harmed because the lender increased the monthly loan payments by fifty percent. Id. at 252 (emphasis added).
The “unique facts” in Shahar are not present in this case. Here, the borrower had time to review the loan documents, had the opportunity to review the falsified information, specifically noticed the change from a fixed rate to an adjustable rate, was not coerced into signing the application, and subsequently obtained a second loan in the form of a line of credit from the same lender. The borrower admitted she failed to read the documents and took the blame for that. These facts are insufficient to establish the defense of unclean hands in this case. Allied Van Lines, Inc. v. Bratton, 351 So.2d 344, 347-48 (Fla.1977) (citation omitted) (“Unless one can show facts and circumstances to demonstrate that he was prevented from reading the contract ... [n]o party to a written contract in this *1035 state can defend against its enforcement on the sole ground that he signed it without reading it.”).
To establish a defense of unclean hands, a defendant must have relied on the .plaintiffs misconduct. As we explained in McCollem v. Chidnese, 832 So.2d 194, 196 (Fla. 4th DCA 2002), “[t]he fact that a party’s conduct is disreputable is entirely irrelevant where the party asserting unclean hands is not the target of, and has taken no action in reliance on that conduct, however disdainful of that conduct a court may be.” In addition to acting in reliance on the misconduct, the defendant must also prove a harm that was caused by the misconduct. Jelic v. CitiMortgage, Inc., 150 So.3d 1223, 1225 (Fla. 4th DCA 2014).
None of the facts from Shahar, nor the required elements of a defense of unclean hands, are present here. The borrower’s monthly loan payments were exactly what she chose to bind herself to when she took notice of the adjustable-rate mortgage at closing. She was not prejudiced by the loan consultant’s falsification of information. The trial court erred in using the doctrine of unclean hands to dismiss the bank’s foreclosure action.[1]

Reversed and remanded for reinstatement of the foreclosure complaint and further proceedings consistent with this opinion.

GROSS and KLINGENSMITH, JJ., concur.

. We also agree the bank was entitled to pursue an action on the note even if we were to affirm the trial court’s dismissal of the foreclosure complaint. Florida law is well-settled that a note and a mortgage are separate instruments and a party may exercise its rights under one document without barring an action under the other document. Thus, a " ‘plaintiff can sue on the note without foreclosing the mortgage, as they are distinct agreements.’ ” Grier v. M.H.C. Realty Corp., 274 So.2d 21, 22 (Fla. 4th DCA 1973) (citation omitted).