# IN THE SUPREME COURT, STATE OF WYOMING

## 2025 WY 94

APRIL TERM, A.D. 2025

August 22, 2025

KATYA HUTTON,

Appellant
(Third-Party Defendant),

v.

MICHAEL L. DYKES and J.
CHRISTOPHER DYKES, as Co-Personal
Representatives of the Estate of Robert P.
Dykes, Deceased,

Appellees
(Defendants/Third-Party Plaintiffs).

S-24-0322

*Appeal from the District Court of Fremont County*
*The Honorable Jason M. Conder, Judge*

*Representing Appellant:*
> Jason M. Tangeman, Nicholas & Tangeman, LLC, Laramie, Wyoming. Argument by Mr. Tangeman.

*Representing Appellee:*
> Lucas E. Buckley, John P. Fritz, and Brent R. Rhodes, Hathaway & Kunz LLP, Cheyenne, Wyoming. Argument by Mr. Fritz.

*Before BOOMGAARDEN, C.J., and GRAY, FENN, JAROSH, and HILL, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**HILL, Justice.**

[¶1]    SL&L Enterprises filed suit against Appellees, Michael L. Dykes and J. Christopher Dykes as co-personal representatives of the Estate of Robert P. Dykes, for failing to pay an overdue promissory note.  The Appellees filed a third-party complaint against Appellant, Katya Hutton, seeking declaratory judgment that she was jointly liable for the promissory note obligations and requesting indemnification and contribution.  Following a bench trial, the district court determined Ms. Hutton was liable for 50% of the promissory note balloon payment and reasonable attorney's fees, costs, late fees, and interest.  On appeal, Ms. Hutton asserts the district court erred in its application of the Florida doctrine of equitable contribution to find that she is 50% liable for these amounts.  We affirm.

## ISSUE

[¶2]    Ms. Hutton raises one issue on appeal.  We rephrase it as:

> Did the district court err when it concluded Ms. Hutton was 50% liable for the $100,000.00 balloon payment and associated reasonable attorneys' fees, costs, late fees, and interest?

## FACTS

[¶3]    The relevant facts are not in dispute.  Ms. Hutton and Robert P. Dykes (Mr. Dykes) were in a long-term relationship and looked for real estate investment properties.  In March of 2021, Ms. Hutton and Mr. Dykes signed a real estate purchase agreement to buy a duplex in North Palm Beach, Florida, from SL&L Enterprises, LLC for $525,000.00.  After Mr. Dykes paid the initial $50,000.00 deposit, Ms. Hutton and Mr. Dykes secured the rest of the $475,000.00 purchase price from SL&L by executing a promissory note (Note) and a mortgage (Mortgage).  Both Ms. Hutton and Mr. Dykes signed the Note and Mortgage as joint obligors.  The Mortgage specifically stated they were executing it "as joint tenants with rights of survivorship."  The Note incorporated by reference the Mortgage's terms.  The Note, in relevant part, obligated both Ms. Hutton and Mr. Dykes to make monthly payments and a balloon payment of $100,000.00 (Balloon Payment) on March 7, 2022.

[¶4]    Ms. Hutton and Mr. Dykes made all the required monthly payments on the Note through February but failed to make the Balloon Payment in March of 2022.  Mr. Dykes passed away on April 16, 2022, and the overdue Balloon Payment remained unpaid.  Mr. Dykes's will was admitted to probate and his sons, Michael Dykes and J. Christopher Dykes, were appointed as the co-representatives for Mr. Dykes's Estate (Dykes Estate).

[¶5]    After SL&L became aware that Mr. Dykes had died, it sent a default notice regarding the unpaid Balloon Payment to both Mr. Dykes's business in Wyoming and Ms. Hutton.  In response to SL&L's default letter, Ms. Hutton requested and received a six-

1

month forbearance and entered into a forbearance agreement (Forbearance Agreement). Ms. Hutton paid nothing towards the Balloon Payment. SL&L made a creditor's claim of $107,571.58 against the Dykes Estate for the unpaid Balloon Payment and interest, late fees, and attorneys' fees. The Dykes Estate rejected the claim. SL&L then filed suit solely against the Dykes Estate for failing to make the overdue Balloon Payment.

[¶6] The Dykes Estate filed an answer to SL&L's complaint and a third-party complaint against Ms. Hutton seeking declaratory judgment that Ms. Hutton was liable for the Balloon Payment under the Note and the Mortgage and that the Forbearance Agreement was an improper and invalid attempt to shift her obligations to the Dykes Estate. The Dykes Estate sought contribution and indemnification from Ms. Hutton. It asserted that once Mr. Dykes died, Ms. Hutton became the sole owner of the duplex, and the Dykes Estate no longer retained any legal interest in it.

[¶7] After some initial proceedings, the parties filed a second round of summary judgment motions. SL&L filed a motion for partial summary judgment against the Dykes Estate on its breach of contract claim for the unpaid Balloon Payment; Ms. Hutton joined in this motion. The Dykes Estate responded with its own motion for summary judgment on its third-party complaint against Ms. Hutton. As to SL&L's summary judgment motion, the district court determined it was undisputed that a valid contract existed, requiring a Balloon Payment, which was never made. The district court, in partially granting SL&L's motion, concluded the breach entitled SL&L, as a matter of law, to judgment against the Dykes Estate, jointly with Ms. Hutton, for the full $100,000.00 Balloon Payment plus reasonable associated amounts.[1]

[¶8] The district court also partially granted the Dykes Estate's motion for summary judgment, finding undisputed material facts supported its claim that Ms. Hutton was jointly liable for all amounts due under the Note and Mortgage. The district court found Ms. Hutton and Mr. Dykes executed the Note and Mortgage "as joint tenants with rights of survivorship" and that the Forbearance Agreement identified Ms. Hutton as a joint obligor. The court thus concluded that Ms. Hutton was jointly liable for the breach of contract claim against the Dykes Estate. The district court partially denied the Dykes Estate summary judgment motion, finding issues remained as to the degree and extent of Ms. Hutton's "joint liability/indemnity" and the validity of the Forbearance Agreement.

[¶9] The district court conducted a one-day bench trial on September 4, 2024. The sole issue at trial was the degree and extent of Ms. Hutton's joint liability for the unpaid Balloon Payment and any associated reasonable attorney's fees, costs, late fees, and interest. Ms. Hutton, Louis Bozzuto (co-owner of SL&L), J. Christopher Dykes, and Michael Dykes all testified at trial.

---

[1] The district court partially denied summary judgment on a breach of fiduciary claim, but this claim was subsequently withdrawn and is not relevant to this appeal.

[¶10]  After the bench trial and additional filings, the district court entered its decision. The court found, in relevant part, that the Note and Mortgage were executed by Mr. Dykes and Ms. Hutton as joint tenants with rights of survivorship.  The court noted that even the Forbearance Agreement between SL&L and Ms. Hutton states that Ms. Hutton is a joint obligor.   Additionally, the court found the joint nature of the purchase was further evidenced by Ms. Hutton's testimony regarding how the payments were made, namely, she stated that money was sent to her "condo's lawyer for [Ms. Hutton] to take care of bills and insurance and mortgages and whatever else expenses there were."  Ms. Hutton also provided testimony of the joint nature of the obligation, describing how Mr. Dykes took care of her financially (in a personal sense) and how the payment on this Note and Mortgage was paid separately, and in a different fashion than he paid for her personal finances.

[¶11]  The court concluded that the Note and Mortgage reflect the purchase of an investment by both Mr. Dykes and Ms. Hutton, each sharing different roles, but as a joint endeavor and obligation, and thus joint liability.  The court reasoned:

> These facts combined with the credible testimony of Michael Dykes and J. Christopher Dykes demonstrate that this is a joint obligation, and when considering this, and the doctrine of equitable contribution, the court finds that each are jointly liable—50/50.   This recognizes the unique facts and circumstances in this case, including but not limited to, the investment nature of the property, Ms. Hutton's active and essential participation in the endeavor, as well as the overall actions, and inactions of Mr. Dykes and Ms. Hutton.

[¶12]  After finding Ms. Hutton 50% liable for the Balloon Payment and other reasonable associated amounts, the district court considered the attorneys' fees because the Dykes Estate disputed their reasonableness.  The district court noted that Ms. Hutton did not argue the attorneys' fees were unreasonable but instead contended the Dykes Estate caused the bulk of attorney's fees, so equitable contribution would eliminate her obligation to pay any fees; and, alternatively, even if jointly liable, the Forbearance Agreement limited her liability.

[¶13]  The district court conducted an analysis under Wyoming law of the reasonableness of the attorneys' fees and concluded that the total fees should be reduced by 50%, from $41,426.75 to $20,713.38, for which Ms. Hutton and the Dykes Estate were liable 50/50.

The court awarded SL&L a total judgment[2] of $126,480.15, split equally between Ms. Hutton and the Dykes Estate.

[¶14]   After the district court issued its decision, SL&L notified the court it had received a check from the Dykes Estate in the amount of $118,150.58 for the Balloon Payment, $5,000.00 late fee, and $13,150.58 in interest.  The district court amended the judgment to add the interest due on the unpaid Balloon Payment, increasing the total judgment to $139,630.73, of which Ms. Hutton was liable for $69,815.37.  Ms. Hutton timely appealed the district court's order.

## STANDARD OF REVIEW

[¶15]   Florida law is implicated in this appeal because the district court applied Florida's law of equitable contribution.  However, Wyoming law applies to procedural matters including the standard of review. *LFP Consulting, LLC v. Leighton*, 2024 WY 12, ¶ 8, 542 P.3d 188, 191 (Wyo. 2024) (citations omitted); *see also Quirch Foods LLC v. Broce*, 314 So. 3d 327, 337-38 (Fla. 3d DCA 2020) (citation omitted) (Florida courts apply the forum's law to procedural matters).

[¶16]   "Requests for equitable relief are matters over which the district court exercises broad discretion." *Spence v. Sloan*, 2022 WY 96, ¶ 60, 515 P.3d 572, 587 (Wyo. 2022) (quoting *EME Wyo., LLC v. BRW E., LLC*, 2021 WY 64, ¶ 36, 486 P.3d 980, 990 (Wyo. 2021)).  Ms. Hutton "bears the burden of showing an abuse of discretion." *Davidson-Eaton v. Iversen*, 2022 WY 135, ¶ 31, 519 P.3d 626, 637 (Wyo. 2022) (citing *In re L-MHB*, 2020 WY 1, ¶ 12, 454 P.3d 935, 938 (Wyo. 2020)).  "A court abuses its discretion when it acts in a manner which exceeds the bounds of reason under the circumstances." *Holloway v. Hidden Creek Outfitters, LLC*, 2025 WY 59, ¶ 30, 569 P.3d 756, 763 (Wyo. 2025) (quoting *Boline v. JKC Trucking*, 2025 WY 27, ¶ 28, 565 P.3d 669, 676 (Wyo. 2025)).  "The ultimate issue for this Court to determine on appeal is whether the trial court could reasonably conclude as it did." *Id.* (quoting *Boline*, ¶ 28, 565 P.3d at 676).  "After a bench trial, we review the district court's factual findings for clear error and its conclusions of law de novo." *Tilden v. Jackson*, 2025 WY 57, ¶ 18, 568 P.3d 1197, 1203 (Wyo. 2025).

[¶17]   The district court's findings "may not be set aside because we would have reached a different result." *Sorum v. Sikorski*, 2024 WY 124, ¶ 10, 559 P.3d 153, 160 (Wyo. 2024) (citation omitted).  We do not substitute ourselves for the trial court as the fact finder. *Id.* In our review, "we assume that the evidence of the prevailing party below is true and give that party every reasonable inference that can fairly and reasonably be drawn from it[,]" and we defer to the district court's findings "unless they are unsupported by the record or

---

[2] Because interest had not been addressed by the parties, it was not part of the district court's decision and judgment.

4

erroneous as a matter of law." *Id.* (citation omitted); *see also Holloway*, ¶ 18, 569 P.3d at 760.

## DISCUSSION

[¶18] Ms. Hutton's overarching claim in the district court and now on appeal is in considering the totality of the circumstances, it is unfair and inequitable for her to be held liable for any of the Balloon Payment and other associated amounts. The "totality of the circumstances" she identifies include Mr. Dykes's conduct, the personal representatives' conduct before and after Mr. Dykes died, and Ms. Hutton's own conduct. In advancing this claim, Ms. Hutton does not claim the Note is ambiguous. She concedes she is a joint obligor under the Note, a joint tenant with rights of survivorship under the Mortgage, and that she is now the sole owner of the duplex obligated to pay the rest of the Note. She also does not claim the district court applied the wrong Florida law. Instead, she asserts the district court, acting in equity, erred in concluding she was liable for 50% of the Balloon Payment, and liable for *any* of the other associated amounts. For clarity, we address the arguments related to the Balloon Payment separately from those related to the other associated amounts.

**Balloon Payment**

[¶19] The parties agree Florida law applies. The Note provides that it and the Mortgage terms "shall be construed and enforced according to the laws of the State of Florida." Wyoming courts will enforce choice-of-law provisions and apply foreign law when doing so is not "contrary to the law, public policy, or the general interests of Wyoming's citizens." *Pinther v. Am. Nat'l Prop. and Cas. Ins. Co.*, 2024 WY 18, ¶ 11, 542 P.3d 1059, 1064 (Wyo. 2024) (citing *Finley Res., Inc. v. EP Energy E&P Co., L.P.*, 2019 WY 65, ¶ 9, 443 P.3d 838, 842 (Wyo. 2019)). We will apply Florida law.

### A.     Ms. Hutton's breach of contract argument

[¶20] Ms. Hutton first asserts the district court erred as a matter of law in finding she was in breach of contract and had defaulted on the Note. Ms. Hutton argues this finding was wrong because she entered into the Forbearance Agreement with SL&L, which cured any default on her part, and, consequently, she could not be found in breach of contract for failing to make the Balloon Payment.

[¶21] This district court did not conclude Ms. Hutton breached the contract. Instead, in granting summary judgment to SL&L, the district court found the Dykes Estate had breached the contract, entitling SL&L to a judgment of the full $100,000.00 Balloon Payment plus other reasonable associated amounts. In granting partial summary judgment to the Dykes Estate, the district court then found Ms. Hutton was a joint obligor with Mr. Dykes under the Note and Mortgage, and thus jointly liable for the Balloon Payment and

5

associated amounts.  Considering the two summary judgment orders together, the district court concluded Ms. Hutton was jointly liable for the Dykes Estate's breach of contract, and therefore jointly liable for the amounts.  Given the facts recited above, we cannot conclude that the district court erred as a matter of law.  The Note and Mortgage unambiguously created a joint obligation and that obligation was not paid.  Specifically, the Ballon Payment was not made when it was both Ms. Hutton and Mr. Dykes's obligation.

[¶22]  We find it important to note that in using the Forbearance Agreement as the basis for this argument, Ms. Hutton essentially concedes she was jointly liable for making the Balloon Payment.  The Forbearance Agreement did not release Ms. Hutton from her joint obligation to make the Balloon Payment—rather it gave her a six-month reprieve from having to pay, while still being held to the express terms of the Note.  As part of the Forbearance Agreement, Ms. Hutton promised to pay the Balloon Payment when the six-month period expired.  SL&L promised to use its best efforts to collect the Balloon Payment from the Dykes Estate before seeking any payment from Ms. Hutton, clearly representing its intent that Ms. Hutton remain obligated to make the Balloon Payment.

**B.    Ms. Hutton's argument the district court erred in its application of Florida's doctrine of equitable contribution**

[¶23]  Initially we note our agreement with the district court that the doctrine of equitable contribution applies.  Florida's doctrine of equitable contribution applies to debt instruments such as the Note which do not address a debtor's right to contribution from co-debtors.  *Shamieh v. HCB Fin. Corp.*, 355 So. 3d 1050, 1053 (Fla. 1st DCA 2023).  The Note and Mortgage undisputedly require application of Florida law.  The Note and Mortgage did not address contribution or indemnification between Ms. Hutton and Mr. Dykes.

> The doctrine of equitable contribution is applied to prevent one of two, or more, joint obligors from being required to pay more than his or her share of a common burden. The doctrine of equitable contribution is grounded on principles of equity and natural justice. The doctrine attempts to distribute equally among those who have a common obligation, the burden of performing that obligation. While the doctrine arose in equity, it is generally enforceable in actions at law.  The law presumes that co-obligors are equally liable for a proportion of the guaranteed obligation.
>
> The doctrine applies to cases involving joint contractual obligations when the parties' agreement does not address their rights to seek contribution. Parties share a common obligation

6

> if they are guarantors on a promissory note that provides for their joint and several liability. Thus, the general rule is that when one co-obligor pays more than his or her fair share of a debt owed by both, the payer is entitled to contribution from the other.

*Id.* at 1053 (citation modified) (citations omitted).

[¶24] Ms. Hutton and Mr. Dykes shared a common burden and obligation—they both signed the Note and the Mortgage, jointly promising to repay the loan. As co-signors of the Note and Mortgage, they both were obligated to pay. Part of that common joint obligation was to make the Balloon Payment by March 7, 2022. The Balloon Payment was never paid, and SL&L sued only the Dykes Estate for non-payment. The Dykes Estate paid SL&L $118,150.58 out of a total judgment amount of $139,150.58, paying more than its proportional share of the joint debt. The Note and the Mortgage did not address the joint obligation Ms. Hutton and Mr. Dykes had to each other, including any right to contribution from the other if one paid on the obligation but the other did not. Under Florida law as set forth in *Shamieh*, the doctrine of equitable contribution applies to the Dykes Estate's request for contribution and indemnity from Ms. Hutton for her proportional share of the Balloon Payment and other associated costs.

[¶25] We now turn to Ms. Hutton's arguments about how the district court erred in its application of the doctrine of Equitable Contribution.

### 1. Ms. Hutton's claim that the Dykes Estate's "unclean hands" precludes the application of the doctrine of equitable contribution

[¶26] Ms. Hutton asserts that the Dykes Estate's request for contribution and indemnity was precluded because it engaged in conduct that constituted "unclean hands." Under Florida law, unclean hands may be asserted by a defendant who claims that the plaintiff acted with unclean hands with respect to the matter in litigation. *See 21st Mortg. Corp. v. TSE Plantation, LLC*, 301 So. 3d 1120, 1122 (Fla. 1st DCA 2020); *Quality Roof Services, Inc. v. Intervest Nat. Bank*, 21 So. 3d 883, 885-86 (Fla. 4th DCA 2009). Florida's unclean hands doctrine is an equitable defense that is akin to asserting fraud; "its purpose is to discourage unlawful activity." *Nat'l Loan Acquisitions Co. v. Tabernacle Christian Center Ministries, Inc.*, 402 So. 3d 1028, 1037 (Fla. 4th DCA 2024) (quoting *McMichael v. Deutsche Bank Nat'l Tr. Co.*, 241 So. 3d 179, 181 (Fla. 4th DCA 2018)). Unclean hands is tantamount to "[u]nscrupulous practices, overreaching, concealment, trickery, or other unconscientious conduct[.]" *Id.* at 1036 (citation omitted). Florida courts have equated unclean hands with conduct that is sneaky and deceitful, reserving it for those who act unlawfully and attempt to trick and deceive others. S*ee Nat'l Loan Acquisitions Co.*, 402 So. 3d at 1037; *MTGLQ Invs., L. P. v. Moore*, 293 So. 3d 610, 615-17 (Fla. 1st DCA 2020). Furthermore, "[d]enying access to the court based on the doctrine of unclean hands is an

extreme sanction which ought to be invoked under only the most provocative or contumacious circumstances. It is tantamount to striking a party's pleadings." *Nat'l Loan Acquisitions Co.*, 402 So. 3d at 1036-37 (quoting *MTGLQ Invs.*, 293 So. 3d at 615 (citation omitted)).

[¶ 27] In *Cong. Park Off. Condos II,* the court stated:

> "'One who has defrauded his adversary to his injury in the subject matter of the action will not be heard to assert a right in equity.'" *Original Great Am.*, 970 F.2d at 281 (quoting *Fruhling v. Champaign County*, 95 Ill.App.3d 409, 51 Ill.Dec. 508, 420 N.E.2d 1066, 1071 (1981) (discussing the equitable defense of unclean hands)). However, the party seeking to raise the defense should be well aware of those egregious facts that justify its application.

*Cong. Off. Condos II, LLC v. First-Citizens Bank & Tr. Co.*, 105 So. 3d 602, 609-610 (Fla. 4th DCA 2013).

[¶28] Interestingly, we too have stated that the doctrine of unclean hands is not generally favored by courts. *Roussalis v. Appollo Elec. Co.*, 979 P.2d 493, 496 (Wyo. 1999) (citing 30A C.J.S. *Equity* § 114 (1992)); *see also Montierth v. Deutsche Bank Nat'l Tr. Co. for Ameriquest Mortg. Securities Tr. 2005-R7, asset-backed pass-through certificate, series 2005-R7*, 2018 WY 41, ¶ 26, 415 P.3d 654, 664 (Wyo. 2018). We have held that "[r]elief may be given to a less than angelic plaintiff while at the same time fashioning a recovery which accounts for the asserted wrong." *Id.* (citing 30A C.J.S. *Equity* § 111 (1992)); *see also Springfield Holding Co. Ltd. LLC v. Stone*, 335 Fed.Appx 699, 707 (10th Cir. 2009) (citation omitted).

[¶29] The district court did not explain its reasoning for rejecting Ms. Hutton's unclean hands claim. In the absence of findings of fact and conclusions of law specifically addressing Ms. Hutton's claim of unclean hands, the district court's ruling carries with it every finding of fact necessary to support its conclusion. *Eiden Constr., LLC v. Hogan & Assocs. Builders, LLC*, 2024 WY 138, ¶ 98, 561 P.3d 304, 329 (Wyo. 2024); *see also Fuger v. Wagoner*, 2024 WY 73, ¶ 26, 551 P.3d 1085, 1093 (Wyo. 2024) ("Although not expressly stated, the district court's conclusion implies the Fugers did not carry their burden of proof regarding offset; something the record bears out.")

[¶30] The record is clear that the district court extensively heard Ms. Hutton's claims about the Dykes Estate's actions and conduct multiple times, through pleadings, two summary judgment hearings, and the bench trial. It determined the Dykes Estate's request for equitable contribution and indemnity should be granted. By implication, the district court rejected Ms. Hutton's unclean hands claims. Ms. Hutton had the burden of proving

the Dykes Estate had unclean hands. Florida law requires proof of "condemnable" conduct and three other elements: (1) reliance on the conduct; (2) relation to the litigation; (3) resulting in an injury. *U.S. Bank Nat'l Ass'n as Tr. for C-Bass Mortg. Loan Asset-Backed Certificates, Series 2006-CB8 v. Qadir*, 342 So. 3d 855, 859 (Fla. 1st DCA 2022) (citations omitted). The record shows Ms. Hutton did not sufficiently address, or prove, each element.

[¶31] In her pleadings and arguments, Ms. Hutton relied on her conclusory allegations that the Dykes Estate's series of actions rose to the level of breach of their fiduciary duty and the estate otherwise came to the court with unclean hands. In support of her claim, Ms. Hutton directed the district court to *Tribeca Lending Corp. v. Real Est. Depot, Inc.*, 42 So. 3d 258 (Fla. 4th DCA 2010) for the general proposition that the Florida unclean hands doctrine "applies not only to fraudulent and illegal transactions, but to any unrighteous, unconscientious, or oppressive conduct." This also is the sole legal support for her argument on appeal.

[¶32] However, Ms. Hutton presented no analysis of the specific conduct that constituted unclean hands under Florida law, especially "unrighteous, unconscientious, or oppressive" conduct. The *Tribeca* case contained no "unrighteous, unconscientious, or oppressive" conduct, nor any "fraudulent and illegal transactions." The *Tribeca* court concluded the pleadings and record facts did not show any trickery, fraud, or oppressive conduct by the Appellant that would bar it from obtaining equitable relief. *Id.*

[¶33] *Tribeca* does not fully explain Florida's unclean hands doctrine. Other Florida cases further explain the unclean hands doctrine. As we noted above, the Florida courts equate "unclean hands" with "sneaky and deceitful" conduct. The Florida cases noted above, along with others, provide a clear understanding that, in Florida, a party claiming unclean hands must clear a high bar before a court will preclude equitable relief. The conduct of the other party must be egregious—outstandingly bad; shocking; flagrant; extremely bad; glaring; conspicuously and outrageously bad. *Nat'l Loan Acquisitions Co. v. Tabernacle Christian Ministries, Inc.*, 402 So. 3d 1028, 1037; *MTGLQ Invs.*, 293 So. 3d at 615; *McMichael*, 241 So. 3d at 181; *Congr. Park Off. Condos II, LLC*, 105 So. 3d at 609; *see also Shahar v. Green Tree Servicing LLC*, 125 So. 3d 251 (Fla. 4th DCA 2013); *Wells Fargo Bank, N.A. v. Williamson*, 199 So. 3d 1031 (Fla. 4th DCA 2016); *U.S. Bank Nat'l Ass'n as Tr. for C-Bass Mortg. Loan Asset-Backed Certificates, Series 2006-CB8 v. Qadir*, 342 So. 3d 855.

[¶34] Ms. Hutton did not argue that the Dykes Estate's acted unlawfully or attempted to trick or deceive her. Instead, Ms. Hutton contends the Dykes Estate had unclean hands because it allegedly: 1) locked Ms. Hutton out of her long-time Colorado residence; 2) refused to return to Ms. Hutton some personal belongings; 3) refused to pay Ms. Hutton a $10,000.00 per month support payment required by Mr. Dykes's will, requiring Ms. Hutton to successfully sue for the monthly payments; and 4) initiated other litigation against Ms.

Hutton for the collection of alleged debts related to bank accounts, credit cards, and a Florida condominium devised to her in Mr. Dykes's will.

[¶35] Nowhere in these complaints about the Dykes Estate's conduct is an allegation of egregiously unlawful, deceitful conduct. The Dykes Estate did nothing to cause Ms. Hutton to sign the Note. She freely and voluntarily signed it and does not claim otherwise. Likewise, the Dykes Estate did nothing to cause Ms. Hutton to fail to make the Balloon Payment (or her 50% share). Under our standard of review and in the absence of findings of fact and conclusions of law specifically addressing Ms. Hutton's claim of unclean hands, the district court's ruling carries with it every finding of fact necessary to support its conclusion. *Eiden Constr., LLC*, ¶ 98, 561 P.3d at 329. The district court could have reasonably concluded the facts in this case did not approach "the level of wrongdoing necessary to support the application of the unclean hands defense." *McMichael v. Deutsche Bank Nat'l Tr. Co.*, 241 So. 3d at 181. The district court could have also reasonably concluded that the pleadings, record, and testimony at trial did not show any trickery, fraud, or oppressive conduct by the Dykes Estate.

[¶36] Furthermore, the district court could have reasonably concluded Ms. Hutton's unclean hands claim did not apply because her claims of unclean hands did not relate to the specific litigation before it. The matter before us is the Dykes Estate's declaratory judgment action to determine Ms. Hutton's liability for a joint debt. *See PNC Bank, Nat'l Ass'n v. Smith*, 225 So. 3d 294, 295-96 (Fla. 5th DCA 2017) ("Whatever recourse Appellees may have had or have now against Bank pertaining to its "unclean" actions regarding this second loan is distinct from the litigation on the first mortgage"). It is not the probate matter or any ancillary matter thereof, including matters dealing with bank accounts, credit cards, and real and personal property disputes. A court of equity is not "an avenger of wrongs committed at large by those who resort to it for relief." *McCollem v. Chidnese*, 832 So. 2d 194, 196 (Fla. 4th DCA 2002) (quoting *McIntosh v. Hough*, 601 So. 2d 1170, 1172 (Fla.1992)).

[¶37] The district court's rejection of Ms. Hutton's unclean hands claim is supported by the record and is not an abuse of discretion.

### 2. Ms. Hutton's claim the Balloon Payment was Mr. Dykes's personal obligation, not a joint obligation

[¶38] Next, Ms. Hutton argues the district court abused its discretion by finding her liable for any amount of the unpaid Balloon Payment because Mr. Dykes personally obligated himself to make the Balloon Payment before he died. She, therefore, contends "[u]nder the totality of the circumstances, equity and fairness mitigates in favor of the Estate of Robert Dykes paying the full $100,000 balloon payment[.]" Ms. Hutton essentially asserts the Balloon Payment either became Mr. Dykes's personal obligation, or always was his

10

personal obligation, and therefore, she did not fail to make the Balloon Payment and owed no amount to the Dykes Estate.

[¶39]  In support of her argument, Ms. Hutton relies on Mr. Dykes's intent before he died. However, Ms. Hutton has not claimed the Note is ambiguous.   Turning again to Florida law because it governs this matter, "[i]t is established law in [Florida] that a contract must be applied as written, absent an ambiguity or some illegality." *Brooks v. Green*, 993 So. 2d 58, 61 (Fla. 1st DCA 2008) (citation omitted).  A promissory note is a species of contract subject to the ordinary requirements of contract law. *Sims v. New Fall Corp.*, 37 So. 3d 358, 361 (Fla. 3rd DCA 2010) (citations omitted) (notes and mortgages are "other types of contracts").  When a contract's terms are clear and unambiguous, the parties' intent must be gleaned only from the four corners of the document. *Pia Holdings, LTD v. Riverfront Plaza, LLC*, 379 So. 3d 547, 551 (Fla. 6th DCA 2024) (citing *Crawford v. Barker*, 64 So. 3d 1246, 1255 (Fla. 2011)).  Extrinsic and parol evidence may not be used to introduce a contractual ambiguity where none exists. *Davis v. Davis*, 390 So. 3d 1251, 1256 (Fla. 5th DCA 2024) (citation omitted); *EcoVirux, LLC v. BioPledge, LLC*, 357 So. 3d 182, 187 (Fla. 3rd DCA 2022).  "Where the language of a contract is plain and unambiguous, it controls— full stop." *Prop. Registration Champions, LLC v. Mulberry*, 373 So. 3d 675, 679 (Fla. 5th DCA 2023).

[¶40]  The Note states in relevant part:

FOR VALUE RECEIVED, the undersigned promise to pay to the order of SL&L Enterprise LLC, a Florida limited liability company …  the principal sum of FOUR HUNDRED SEVENTY FIVE THOUSAND AND 00/100 DOLLARS ($475,000.00) with interest from the date hereof, at a rate of Five and 00/100 percent (5%) per annum on the balance from time to time remaining unpaid.  The said principal and interest shall be payable in lawful money of the United States of America, on the date and in the following manner:

The sum of $2,549.90 representing a payment of principal and interest shall be due and payable on April 7, 2021, and on the 7th day of each and every calendar month thereafter until March 7, 2022, at which time a principal payment of $100,000.00 shall be due and payable, commencing on April 7, 2022 the sum of $1,975.46 representing a payment of principal and interest shall be due and payable until April 7, 2026 at which time the remaining principal balance, $344,011.08, together with any accrued but unpaid interest, shall be due and payable.

Ms. Hutton and Mr. Dykes signed the Note, making them both the "undersigned."

[¶41]  The Note is one page and contains no other provisions regarding payments.  The Note's plain language clearly states the "undersigned"—both Ms. Hutton and Mr. Dykes— promise to make the Balloon Payment by March 7, 2022.  Nothing in the Note plainly and undoubtedly identifies the Balloon Payment as only Mr. Dykes's personal obligation.  Ms. Hutton's claim contradicts the Note's clear and unambiguous language.

[¶42]  Considering the Note as a whole, the plain clear language establishes the parties' intent.  Ms. Hutton, by signing the Note, was obligating herself as a joint obligor to make the Balloon Payment by March 7, 2022 (as well as timely paying all the payments).  Ms. Hutton's argument relies on evidence beyond the four corners of the Note, including the testimony of individuals involved in communication about making the Balloon Payment before Mr. Dykes died.  However, because the Note's language is unambiguous, Florida law forbids us from entertaining extrinsic evidence contrary to its meaning.  *GSE Consulting, Inc. v. L3Harris Technologies, Inc.*, 59 F.4th 1196, 1203 (11th Cir. 2023) (citation omitted); *Pritchard v. Levin*, 305 So. 3d 628, 631.

[¶43]  Ms. Hutton faults the district court for not disregarding the plain, unambiguous language of the Note, asserting notions of fairness and equity.  But it is not the role of the courts to make an otherwise valid contract more reasonable from the standpoint of one contracting party.  *Brooks v. Green*, 993 So. 2d 58, 61 (Fla. 1st DCA 2008) (citations omitted).  Even when the district court is acting in equity, it is not free to simply disregard the law to do what it thinks is fair.  *See Gallagher v. Townsend*, 2019 WY 66, ¶ 6, 443 P.3d 847, 849 (Wyo. 2019); *Jacoby v. Jacoby*, 2004 WY 140, ¶ 10, 100 P.3d 852, 855 (Wyo. 2004) (claim of unjust enrichment).

> A court of equity has no more right than has a court of law to act on its own notion of what is right in a particular case; it must be guided by the established rules and precedents. Where rights are defined and established by existing legal principles, they may not be changed or unsettled in equity. A court of equity is thus bound by any explicit statute or directly applicable rule of law, regardless of its views of the equities.

*Spence v. Sloan*, 2022 WY 96, ¶ 61, 515 P.3d 572, 587 (Wyo. 2022) (quoting *Estate of Seader*, 2003 WY 119, ¶ 23, 76 P.3d 1236, 1244-45 (Wyo. 2003)).

[¶44]  The district court did not err by finding the Balloon Payment was not Mr. Dykes's sole obligation and that Ms. Hutton was liable under the Note's plain language.

### 3.  Ms. Hutton's argument she is paying more than her fair share

[¶45]  Finally, Ms. Hutton claims that her contributory share should be zero, not 50%.  The basis for her contention is that Mr. Dykes intended to personally make the Balloon Payment

without any contribution from her. The crux of Ms. Hutton's argument is that fairness and equity demand she owes nothing to the Dykes Estate. We concluded in the previous section that, according to the plain, unambiguous language of the contract, Ms. Hutton is jointly liable for the Balloon payment.

[¶46] As stated earlier, Florida's doctrine of equitable contribution applies to prevent a joint obligor from being required to pay more than his or her share of a common obligation. *Shamieh*, 355 So. 3d at 1053 (citation omitted). In this regard, co-obligors are presumed to be equally liable for a proportion of the common joint obligation. *Id.* "Thus, the general rule is that when one co-obligor 'pays more than his [or her] **fair share** of [a] debt owed by both, the payer is entitled to contribution from the other.'" *Id.* (citations omitted) (emphasis added).

[¶47] In *Shamieh*, like Ms. Hutton's case, one co-obligor, Daher, settled with the bank, exchanging his acknowledgment of the enforceability of the note and mortgage and cooperation in the bank's litigation against the other co-obligor, the Shamiehs, for the bank's release of its claims against Daher. *Id.* at 1052. The Shamiehs ultimately settled with the bank, paying it one million dollars in exchange for the bank releasing all of its claims against them under the note and mortgage. *Id.* at 1052-53. The Shamiehs sought contribution from Daher for 50% of the total settled amount—$500,000.00. *Id.* at 1053. On appeal from the granting of summary judgment, the appellate court discussed common obligation in regard to Florida's doctrine of equitable contribution. The court held that Daher's settlement had no impact on the common obligation—the debt under the promissory note and the mortgage—the Shamiehs and Daher shared together. *Id.* The court also determined that because the Shamiehs had paid more than their pro rata share of the common obligation, they were entitled to demand Daher contribute his pro rata share. *Id.* at 1055. Because the appeal was from the granting of summary judgment, the case was remanded back to the trial court to determine in equity the pro rata share of the common obligation.

[¶48] Applying the *Shamieh* principles here, Ms. Hutton's Forbearance Agreement had no impact on the common obligation between Ms. Hutton and the Dykes Estate. The Forbearance Agreement applied solely to an arrangement between SL&L and Ms. Hutton. Because the Dykes Estate paid more than its pro rata share of a common obligation, it was entitled to demand Ms. Hutton contribute her pro rata share, which it did. The district court then had to determine in equity Ms. Hutton's pro rata share of the common obligation, which it did.

[¶49] Ms. Hutton's is asking us to reweigh the evidence, but our standard of review precludes this. *Amadio v. Amadio*, 2025 WY 21, ¶ 24, 564 P.3d 259, 267 (Wyo. 2025) (citing *Vassilopoulos*, 2024 WY 87, ¶ 7, 557 P.3d at 729). Under our clear error review of a bench trial, we apply the following:

> The factual findings of a judge are not entitled to the limited review afforded a jury verdict. While the findings are presumptively correct, the appellate court may examine all of the properly admissible evidence in the record. Due regard is given to the opportunity of the trial judge to assess the credibility of the witnesses, and our review does not entail re-weighing disputed evidence. Findings of fact will not be set aside unless they are clearly erroneous. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.

*Sorum*, ¶ 10, 559 P.3d at 160 (citation omitted). Moreover, district courts have broad discretion over equitable relief matters. *Spence*, ¶ 60, 515 P.3d at 587.

[¶50] Ms. Hutton made her argument that her "fair share" is 0% to the district court, and it was unpersuaded. We assume the evidence presented by the Dykes Estate below is true and give it every reasonable inference that can fairly and reasonably be drawn from it. *Sorum*, ¶ 10, 559 P.3d at 160. Without reweighing the evidence or reassessing credibility of the parties or witnesses, and examining the evidence in a light most favorable to the Dykes Estate, without considering evidence of Ms. Hutton which conflicts, we find the record supports the district court's findings and conclusions.

[¶51] Ms. Hutton also argues that when looking at the entire $525,000 purchase price of the duplex, Mr. Dykes and the Dykes Estate paid approximately only 37% of it. Ms. Hutton argues that making her pay approximately 63% of the total purchase price for the duplex, which she now solely owns, is not equitable. Ms. Hutton cites no legal authority for her assertion that she is now responsible for 63% of the total purchase price of the duplex, and thus it is unfair to make her pay any of the Balloon Payment. The only matter before the district court was the Balloon Payment, not the entire purchase price. Furthermore, Ms. Hutton now owns the duplex individually.

[¶52] We cannot say it was unreasonable or exceeds the bounds of reason for the district court not to place emphasis on the amount each side made towards the total purchase price in these circumstances. Accordingly, we find the district court did not abuse its discretion in this regard.

**Other Associated Costs**

[¶53] Lastly, we turn to Ms. Hutton's assertion that she was not liable for any of the attorneys' fees, interest, late fees, and costs because the Dykes Estate caused these costs. We found no Florida law that suggests that attorneys' fees, costs, late fees, and interest can never be part of the common obligation, and Ms. Hutton has not pointed us to a case that

so holds. Instead, *Shamieh* discussed that there might be factual situations where such costs are not part of the common obligation, but that determination would be up to the trial court, sitting in equity, to decide. *See Shemiah*, 355 So. 3d at 1055-56.

[¶54] The district court rejected Ms. Hutton's assertion that the Dykes Estate is solely responsible for the extensive litigation surrounding this matter. The district court did not find the Dykes Estate's litigation was frivolous. In fact, the district court stated in its second summary judgment order that, although contentious, the legal matter was now clear. We take this to mean the district court determined the various litigation maneuverings were necessary to bring clarity to the matter at hand. Additionally, the personal representatives of the Dykes Estate have fiduciary obligations related to the administration of the estate. Wyo. Stat. Ann. §§ 2-1-301(a)(xv); 2-7-103; 2-7-401 through -414; 2-7-701 through -729. Although it is not entirely clear in the record, some of their conduct might be attributable to those obligations.

[¶55] What is clear in the record, however, is Ms. Hutton did not make the overdue Balloon Payment, or her equal share of it, at any time prior to litigation. Nor had she paid it after the forbearance period ended. Her contention from the moment Mr. Dykes passed away up until this appeal, has been that the Dykes Estate should have to pay the full amount. Thus, she plays a part in causing the reasonable attorneys' fees, late fees, costs, and interest. What's more, it was the Dykes Estate that challenged the reasonableness of the attorney's fees and got them reduced.

[¶56] The district court weighed and evaluated the part each party played in this dispute, and we will not disturb that discretionary finding on appeal. *Lyman*, ¶ 31, 524 P.3d at 755.

## CONCLUSION

[¶57] Based on the record before us, the district court did not exceed the bounds of reason under the circumstances presented by this case. Accordingly, the district court did not abuse its discretion or act contrary to law.